In Matter of MILTON KNAPP, Appellant, against MITCHELL D. SCHWEITZER, as Judge of the Court of General Sessions, et al., Respondents.

First Department, November 27, 1956.

*Bernard H. Fitzpatrick* of counsel (*William J. Keating* with him on the brief; *William J. Keating* and *Butler, Bennett & Fitzpatrick*, attorneys), for appellant.

*Albert P. Loening, Jr., Assistant District Attorney* of counsel (*Charles W. Manning, Assistant District Attorney*, with him on the brief; *Frank S. Hogan, District Attorney*, attorney), for respondents.

BERGAN, J. Petitioner Milton Knapp has been committed for contempt by the Court of General Sessions for failure to answer questions before the New York County Grand Jury. He is a copartner of Eagle Reel and Manufacturing Co., which is engaged in interstate commerce. The employees of the firm are organized by Local 239 of the International Brotherhood of Teamsters.

The subject on which the Grand Jury inquiry was being prosecuted and in which the testimony of petitioner was sought to be elicited was whether the crimes of bribing labor representatives, under section 380 of the Penal Law; of conspiracy, under section 580; and of extortion, under section 850, had been committed.

When called before the Grand Jury on April 23, 1956, petitioner asserted his privilege against self incrimination. This privilege is preserved by the New York Constitution (art. I, § 6). He was required, nevertheless, by the Grand Jury on a later date to answer the questions directed to him and upon this mandate he acquired, and was expressly given by the Grand Jury, an immunity coextensive with the operational effect of New York law. (Penal Law, § 2447; cf. *People* v. *De Feo,* 308 N. Y. 595.)

Petitioner thereupon asserted that although the statute regulating immunity in New York would protect him against prosecution in this State based on his testimony, answers elicited under compulsion of New York authority would incriminate him under Federal law which makes unlawful, among other things, the payment of money by an employer to any representative of his employees in an industry affecting commerce (U. S. Code, tit. 29, § 186). He thereupon persisted in refusal to answer the questions before the Grand Jury and was held in contempt by the Court of General Sessions.

This is an article 78 proceeding against the Judge presiding at the General Sessions at which petitioner was held in contempt and against the District Attorney of New York County in the nature of prohibition. The amended answer pleads matters largely in the nature of defenses of law; and a reply served by the petitioner contains an affirmative pleading that the "reality

of petitioner's danger of self-incrimination" under provisions of the Federal Labor Management Relations Act is based on the public announcement of the United States Attorney of the Southern District of New York of an intention "to cooperate with the District Attorney of New York County in the prosecution of criminal cases in the field of the subject matter out of which petitioner's commitment arose ". This reply further alleges that the respondent District Attorney "intends to cooperate with " the United States Attorney " in the prosecution of such criminal cases in the courts of the United States ".

Since the court at Special Term disposed of these issues summarily without trial and by a dismissal of the petition which carried with it a dismissal of the reply as being insufficient, we are required to accept as true upon this appeal the factual allegations of the reply in respect of the co-operation between Federal and State prosecuting officers in this area of criminal responsibility occupied both by Federal and State Governments within their respective statutory enactments. (*Matter of Doherty* v. *McElligott,* 258 App. Div. 257, 258, 260.)

We therefore are required to begin the consideration of the question raised by the petitioner by accepting as a demonstrated fact in the record before us the actual co-operative policy between the appropriate Federal and State authorities in prosecuting crimes arising from acts made criminal both by Congress and by the New York Legislature and concerning which the petitioner's testimony is sought to be compelled.

If the literal logic of some of the decided cases be carried to the ultimate it would seemingly be quite possible for a State prosecuting authority to obtain a direction to compel a witness to incriminate himself upon granting a State immunity and for this to be followed by a Federal prosecution for the act disclosed under compulsion; and, indeed, with the compelled testimony used in support of the Federal charge.

But the full implications of such a concave view of constitutional privilege have not been faced, and the cases which have called up discussion of the question have not required that this ultimate question be decided. In the margin of decision the view sometimes has been expressed that the possibility of Federal prosecution upon the compelled State disclosure has been remote or unlikely.

The complex and delicately adjusted balance of sovereignties between Federal and State Governments presupposes a related measure of responsibility for each. Each is bound by identical constitutional restraints. The State has its function under the United States Constitution as well as the Federal Government;

and they have extremely close and continuous relations with each other. We are not here treating of sovereign strangers but of inseparable sovereigns of the same fibre and substance.

The cases of different sovereign jurisdictions decided under English law and sometimes cited in American cases on this subject, seem to us to have only illustrative or peripheral relation to the precise American constitutional problem of what ought to happen when a State compels criminal self incrimination in an area of actual exposure of the witness to prosecution under effective and operative Federal criminal law. Examples of the often cited English cases which hold the British court will not protect witnesses against violation of the law of another country are *King of the Two Sicilies* v. *Willcox* (7 State Trials, N. S. 1050, 1068); *Queen* v. *Boyes* (1 B. & S. 311, 330). (Cf. *United States* v. *Murdock*, 284 U. S. 141, 149.)

The States of the United States certainly are not '' other countries '' in relation to the Federal Government. Federalism as we have developed it does not exist in airtight compartments of sovereign power; both general and State Governments spread together over the same land and embrace the same people.

The whole tenor of constitutional law as developed in the courts of the United States suggests that a witness compelled by a State to testify against himself in a criminal case also affected by Federal law, where the Federal prosecuting authorities have knowledge of the State proceedings, and especially where they co-operate in these proceedings, will be protected fully by the judicial power of the United States against the adverse effects of such compulsion on subsequent Federal prosecution.

The usual rule is, of course, that the United States will not deem itself bound not to prosecute because of unilateral exercise of compulsion to self incrimination by a State; and this in part on the ground that the general government will not be restrained in its policy by local action taken by a State Government. The principle is illustrated in *Feldman* v. *United States* (322 U. S. 487, 490) in which Mr. Justice FRANKFURTER noted that '' a State cannot by operating within its constitutional powers restrict the operations of the National Government within its sphere ''. (See, also, *Jack* v. *Kansas*, 199 U. S. 372, 380.)

But in some of the decisions on the subject which preceded *Feldman* v. *United States,* the court regarded the risk of Federal prosecution arising from State compulsion as distant and remote; and this conception is in the overtone of the opinions as suggesting by mere remoteness a safeguard enough for the case actually presented. In *Jack* v. *Kansas,* for example, in dealing

with an argument in objection to a State immunity statute that it did not protect against Federal prosecution in the same field, Mr. Justice PECKHAM agreed with the Supreme Court of Kansas that the danger that Federal prosecution " would ever take place " was " so unsubstantial and remote " (p. 382) that it was unnecessary, and of course not possible, for the State to provide against it.

" We do not believe that in such case there is any real danger of a Federal prosecution, or that such evidence would be availed of by the government for such purpose " (p. 382). In dealing with the inability of the State to prevent prosecution of the same party for a Federal violation the court interpolated the comment " if it could be imagined that such prosecution would be instituted under such circumstances " (p. 380).

In dealing with its own immunity statutes, the United States has been able to give a simple and summary answer to the assertion that Federal immunity does not safeguard the witness against State prosecution based on his testimony. The supremacy of the general government is asserted. (*United States* v. *Murdock, supra*; *Hale* v. *Henkel,* 201 U. S. 43.) The converse problem posed by the inability of a State to assure immunity against Federal prosecution is at once more subtle and more difficult of adequate solution which would seem to hang on some measure of co-operation, administrative or judicial, between the two governments.

The opinion in *Feldman* v. *United States* (322 U. S. 487, *supra*) makes it clear that the complete nonparticipation of Federal authorities in the private proceedings in the New York State court which elicited the incriminating testimony was an important element which led to the permitted use of such testimony in the United States court.

If a Federal agency " were to use a State court as an instrument for compelling disclosures for federal purposes " the policy of the courts of the United States would be to protect the witness " against such an evasive disregard of the privilege against self-incrimination " (p. 494). Moreover, the court was of opinion that there was " no * * * complicity " between private parties obtaining the incriminatory testimony in the State court " and federal law-enforcing officers " (p. 492).

Although some of the restraints imposed by the first eight amendments of the Constitution of the United States on the Federal Government have now an impact upon the States by virtue of the reflected due process and equal protection requirements of the Fourteenth Amendment (*Board of Educ.* v. *Barnette,* 319 U. S. 624), it is an interesting commentary on constitutional development in the United States that the prohibition

on self incrimination in the Fifth Amendment is not by mirrored force of the Fourteenth Amendment held to be binding on the States (*Adamson* v. *California,* 332 U. S. 46; *Palko* v. *Connecticut,* 302 U. S. 319; *Twining* v. *New Jersey,* 211 U. S. 78); although the historically closely related protection against the effect of a confession elicited by extra-judicial force is protected by the Fourteenth Amendment (*Lea* v. *Mississippi,* 332 U. S. 742).

But although the Fourteenth Amendment also does not operate to prevent, for example, the reception of evidence of a State crime in a State court obtained by an unreasonable search and seizure by a State Government (*Wolf* v. *Colorado,* 338 U. S. 25) nevertheless the active participation of officers of the United States in a State-initiated search and seizure will effectively bar the reception of such evidence in the Federal courts within the operative effect of the United States Constitution (*Byars* v. *United States,* 273 U. S. 28).

" We cannot avoid the conclusion ", said Mr. Justice SUTHER-LAND, " that the participation of the agent in the search was under color of his federal office and that the search in substance and effect was a joint operation of local and federal officers " (p. 33). The Federal Government has the right to use evidence improperly seized by State officers " operating entirely on their own account ", but the " rule is otherwise when the Federal government * * * participates " in the wrongful seizure.

It is not difficult from this to analogize joint co-operation of State and Federal authorities, or the participation of Federal authorities by co-operation with State officers, in elicitation of compulsory incriminating testimony so that it will result in the protection of the Fifth Amendment in a subsequent criminal prosecution based on such testimony. In *Burdeau* v. *McDowell* (256 U. S. 465, 475) which considered the effect of both the Fourth and Fifth Amendments on papers seized, the court was careful to note that " no official of the Federal government had anything to do with " the taking of the property in question.

While the restraint of the Fifth Amendment does not directly touch our judicial processes, we in New York have our own constitutional provision in the same spirit and in the same language (N. Y. Const., art. I, § 6), and we are bound as far as our strength permits to give it effect.

We are not able to assure protection against a Federal prosecution using the self-incriminatory testimony we compel against objection and for which we give a State immunity, and the validity of our immunity statute does not depend on our ability to secure the witness against Federal prosecution. (*Dunham* v. *Ottinger,* 243 N. Y. 423.)

But we cannot in fair compliance with our own Constitution remain insensible to the actual dangers of nonimmunized compulsory incrimination in the United States courts where we compel testimony in the ever-broadening areas and in subjects affected by the criminal laws of both governments. And while we can exercise no control over Federal practice, we can exercise a judicial supervision over State enforcement officers.

A State prosecuting officer investigating an area in which the criminal laws of both the Federal and State Governments operate together, and requiring immunized testimony in the development of his case, could himself give adequacy to State constitutional safeguards by tendering co-operation with the appropriate United States attorney.

If the co-operation were accepted by the Federal Government we have no doubt that within *Feldman* v. *United States* (322 U. S. 487, *supra*), *Byars* v. *United States* (273 U. S. 28, *supra*) and *Burdeau* v. *McDowell* (256 U. S. 465, *supra*) the courts of the United States would afford adequate safeguards to the witness. Such safeguards would strengthen the confidence with which a State might undertake to compel self-incriminating testimony where duality of criminal law might be operative, and it would tend to assure the adequacy of State constitutional guaranties binding alike on State prosecutors and State courts.

When to seek such co-operation and when to proceed without it would, in the nature of things, rest in the conscience and judgment of the District Attorney, who would act in consonance with the spirit of the New York Constitution. The solution, at bottom, lies in co-operation in good faith between the two governments and their judicial and prosecuting establishments, both of which live in quite the same tradition.

Assuming, as we do in this case, from the undisputed allegation of the public announcement of co-operation by the United States attorney with the District Attorney, and the undisputed allegation of intention by the District Attorney to co-operate with the United States attorney, that the fact of co-operation is true and that the instant inquiry is embraced within it, adequate protection under the Federal decisions would have inured to the petitioner.

The United States courts would not, of course, accept these pleadings as conclusive; but if Federal judicial inquiry disclosed the facts to be as they are here pleaded, the immunity that petitioner would gain under New York law would seem to extend to the residual risk of Federal prosecution. On the other hand, if it is not shown that the alleged co-operation and intent to co-operate did in fact exist, it would not appear that there is a

586

real and substantial danger that the testimony compelled by the State will be used in a subsequent Federal prosecution.

The order should be affirmed, without costs.

BOTEIN, J. P., RABIN, COX and FRANK, JJ., concur.

Order unanimously affirmed, without costs.