THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK COSTELLO, Appellant.

First Department, September 30, 1958.

*Edward Bennett Williams* of counsel (*Osmond K. Fraenkel* with him on the brief; *Morris Shilensky,* attorney), for appellant.

*Charles W. Manning* of counsel (*Richard G. Denzer* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

BERGAN, J.   An attempt to assassinate him having been made on May 2, 1958, appellant Frank Costello was called as a witness before the New York County Grand Jury on its inquiry into the crime.

While he was in a hospital for treatment of injury resulting from the attack on him, the police, searching his clothing, had found in his pocket a paper containing notations of various amounts of money connected with " casino wins " and " slot wins " and payments to individuals.

In addition to the direct facts of the crime, the witness was asked questions concerning this paper and its contents on the theory of the District Attorney that the paper and its notations could have some bearing on a conspiracy to assassinate the witness.

Appellant refused to answer these questions on the ground they would be self-incriminating; he was directed by the foreman of the Grand Jury to answer under conditions which adequately conferred immunity under New York law from subsequent criminal prosecution. (Penal Law, § 2447, subd. 2.)  Before the Grand Jury, the witness asserted he was then under State and Federal investigation and that previous testimony given by him before New York grand juries had been turned over to Federal authorities.

In the proceeding before the Court of General Sessions to compel answers to the questions, he asserted the danger of his exposure to Federal prosecution. The court directed the answers and, on the failure of the witness to comply, entered an order punishing him for contempt, which is here reviewed.

The formula suggested by this court in *Matter of Knapp* v. *Schweitzer* (2 A D 2d 579, affd. 2 N Y 2d 913, affd. 357 U. S. 371) as an attempt at solution of the problem of self-incrimination in areas where Federal and State criminal jurisdiction overrun, was based on a concept of protection implicit in tendered co-operation between State and Federal authorities.

But the Supreme Court has held that the announced intention of co-operation with State officials by the Federal prosecutor shown by the *Knapp* record was " devoid of legal significance as a joint state and federal endeavor " (*Knapp* v. *Schweitzer, supra,* p. 380, opinion Mr. Justice FRANKFURTER).

The formula will not be expected to afford protection against subsequent Federal prosecution to a witness whose testimony is compelled by the State unless more in the way of State and Federal joint action be shown than was demonstrated in the *Knapp* record, i.e., if " a federal officer should be a party to the compulsion of testimony by state agencies, the protection of the Fifth Amendment would come into play. Such testimony is barred in a federal prosecution " (p. 380). There is no showing in the record before us of joint action between the authorities of the two governments; or, indeed, of any co-operation between them in the development of this case.

Although the potential exposure to Federal prosecution asserted by appellant seems reasonable enough, since the Federal Government might form an interest in the answers which he could give concerning the written notations on the paper found in his pocket, this exposure is not a ground for excusing the answers where the immunity which flows from State law is as adequate as the State can make it against its own subsequent prosecution. (*Dunham* v. *Ottinger,* 243 N. Y. 423.) This rule is not, of course, open to re-examination here. (Cf. dissenting opinions by BLACK and DOUGLAS, JJ., in *Knapp* v. *Schweitzer, supra,* p. 383.) We are of opinion, therefore, on the issue of exposure to Federal prosecution, that the order at General Sessions should not be disturbed.

Appellant argues additionally that since the document concerning which he was questioned was itself unlawfully obtained by the police searching through his pockets without his consent, questions which tend to self-incrimination concerning the document compound the affront. But with the danger wrung out of the case by the immunity statute, no injury at all to this witness is contemplated from the answers, as far as New York is concerned, however the original document was obtained; and the damage from its seizure and use is certainly more benign than when it might become an actual instrument of prosecution. (*People* v. *Defore,* 242 N. Y. 13.)

He contends, too, that there is uncertainty in the scope of the immunity tendered. The order appealed from makes it clear concerning the precise subject to which immunity was extended and for which compulsion to testify was exerted. It appears that some other questions were asked beyond this area which the witness refused to answer and which were not embraced in the order of punishment. Whether such questions which the witness refused to answer are within or without the general scope of the inquiry seems irrelevant as far as immunity is con-

cerned. The witness is not hurt by what he successfully refused to do. What confers immunity is the refusal to answer, plus the answer " to a question ". (Penal Law, § 2447, subd. 1.)

The order should be affirmed.

STEVENS, J. (dissenting). This was " an investigation to determine whether there has been, and still is, a conspiracy to commit the crime of murder ".

In the course of the interrogation of the witness it appears that the witness invoked his constitutional rights with respect to certain questions and was not pressed. The questions were not set forth so we lack information as to their content. The District Attorney stated " In other words, there was no intention to grant him immunity with respect to certain matters that were incorporated in certain questions ". Absent any information or knowledge as to the content of the questions excluded we are required to conclude either that they were not within the scope of the investigation and assume the present questions to have been so included, or that both phases were within the area of proper inquiry. Either way there seems to have been an express limitation on the immunity granted. It is basic that the immunity granted must be coextensive with and as broad as the constitutional privilege of the witness, that is, as broad as the peril threatened. A layman witness should not be required to recall, review and assess his testimony to determine the extent of the immunity and if the limit of the protection afforded is consistent with the danger faced. (*People* v. *De Feo*, 308 N. Y. 595.)

I think the case on this aspect may be distinguished from *Matter of Knapp* v. *Schweitzer* (2 A D 2d 579, affd. without opinion 2 N Y 2d 913, affd. U. S. Supreme Court, 357 U. S. 371 [June 30, 1958]).

In *Knapp* v. *Schweitzer* there was no reservation in the area of immunity offered and, by vote of the Grand Jury, conferred upon the defendant. It may be contended that if later the People sought prosecution on a facet reasonably comprehended within the area of prohibition by reason of immunity, they would be estopped by a determination of the court. But the price of speculation in the event of an adverse ruling by a judicial tribunal could be confinement. It is precisely this which the statute seeks to avoid for it is provided that " immunity shall not be conferred upon any person except in accordance with the provisions of this section " (Penal Law, § 2447, subd. 4). It (immunity from State prosecution) is conferred when the Grand Jury " is expressly requested by the prosecuting attorney to order such person to give answer or produce evidence ". (Penal Law,

§ 2447, subd. 3[c].) Here the immunity conferred was incomplete for it became operative only when granted and should not be presumed to be retroactive to include areas expressly excluded but presumed relevant.

For the reasons stated I dissent and vote to reverse.

RABIN, J. (concurring in dissent by Mr. Justice STEVENS). I join in the dissent of Mr. Justice STEVENS and concur in his opinion. Of course, fear of Federal prosecution, even though there is a clear probability that such prosecution would follow, based upon testimony wrung from a witness through the use of the State immunity statute, cannot justify a refusal to answer (*Knapp* v. *Schweitzer*, 357 U. S. 371). Nor does my dissent rest on the unlawful seizure of the paper which forms the basis for the questions which the witness refused to answer, even though there might be some just basis to his claim that he should not be confronted with the document so unlawfully obtained from him. It should be said in passing that such practice should be condemned. It should be even more strongly condemned in an instance such as this, where it is sought to have the victim of such practice give testimony concerning the very document that the State should not have had in its possession in the circumstances. The court should not look with tolerance upon willful unlawful practices by the State, placing a premium upon them and encouraging their continuance by permitting their use in legal proceedings. Though this case differs in degree from the case of *Rochin* v. *California* (342 U. S. 165) it is the same in principle.

As does Mr. Justice STEVENS, I base my dissent on the fact that the immunity offered was a qualified one — not broad enough to cover the peril faced. The offer of immunity to the witness was made with the express reservation that it was not intended to grant immunity with respect to those matters that were incorporated in the questions theretofore asked and which the witness refused to answer. How can we tell but that the answers sought to be compelled may not relate to the other matters as to which immunity was expressly withheld? If so related the immunity would on the one hand be offered and on the other hand withheld. We are not confronted with the question whether having answered the questions through compulsion, the witness would then be immune from prosecution. We are confronted with the question that arises prior thereto, i.e., may the witness be compelled to answer those questions in the light of the District Attorney's warning, implicit in his reservation, that the witness may be prosecuted if his answers related to

matters as to which "there was no intention to grant him immunity." The witness should not be compelled to speculate on the effect of his compliance. In these circumstances I vote to reverse.

BOTEIN, P. J., and MCNALLY, J., concur with BERGAN, J.; STEVENS, J., dissents in opinion, in which RABIN, J., concurs in opinion.

Order affirmed.