THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN DE FEO, Appellant.

Argued January 19, 1955; decided June 9, 1955.

*Harris B. Steinberg, Jesse Climenko, Martin I. Shelton* and *Richard A. Green* for appellant. I. The mandate of commitment must be reversed because appellant's constitutional rights were violated when he was compelled to appear before the Grand Jury and give testimony. (*People* v. *Ferola,* 215 N. Y. 285; *People* v. *Gillette,* 126 App. Div. 665; *People* v. *Bermel,* 71 Misc. 356; *People* v. *Seaman,* 174 Misc. 792; *Counselman* v. *Hitchcock,* 142 U. S. 547; *People ex rel. Taylor* v. *Forbes,* 143 N. Y. 219; *People* v. *Singer,* 18 Abb. N. C. 96; *People ex rel. Hummel* v. *Davy,* 105 App. Div. 598; *People* v. *Cahill,* 193 N. Y. 232; *People* v. *Reiss,* 255 App. Div. 509.) II. Appellant never acquired complete immunity. (*People ex rel. Lewisohn* v. *O'Brien,* 176 N. Y. 253; *Matter of Doyle,* 257 N. Y. 244.) III. Appellant did not waive his privilege. (*People* v. *Chlebowy,* 191 Misc. 768; *United States* v. *Monia,* 317 U. S. 424; *People ex rel. Hofsaes* v. *Warden of City Prison,* 277 App. Div. 398, 302 N. Y. 403; *People* v. *Breslin,* 306 N. Y. 294.) IV. The immunity conferred on appellant at the fourth session — if any — did not relate back to the first three sessions. (*People* v. *Teal,* 196 N. Y. 372; *Brown* v. *United States,* 83 F. 2d 383; *Nueslein* v. *District of Columbia,* 115 F. 2d 690; *United States* v. *Setaro,* 37 F. 2d 134; *United States* v. *Mitchell,* 274 F. 128; *Malinski* v. *New York,* 324 U. S. 401; *People* v. *Leyra,* 302 N. Y. 353, 345 U. S. 918, 345 U. S. 946; *People* v. *Klein,* 185 App. Div. 86.) V. Even if immunity was conferred on appellant, the defective mandate compels reversal. (*People* v. *Diefendorf,* 281 App. Div. 465, 306 N. Y. 818.) VI. The mandate of commitment must be reversed because the finding of contempt is predicated on alleged contumacious conduct with which appellant was not charged in the affidavit accompanying the order to show cause initiating the proceeding. (*Matter of Landau,* 230 App. Div. 308.) VII. The mandate of commitment is insufficient on its face because it does not set forth the " particular circumstances " of the offense. (*Matter of Steingut* v. *Imrie,* 270 App. Div. 34.) VIII. Appellant was not willfully evasive or contumacious in his testimony before the Grand Jury. (*Blim* v. *United States,* 68 F. 2d 484; *Matter of Parsons* v. *Steingut,* 185 Misc. 323, 270 App. Div. 34; *Matter of Finkel* v. *McCook,* 247 App. Div. 57, 271 N. Y. 636; *United States* v. *McGovern,* 60 F. 2d 880; *O'Connell* v. *United States,* 40 F. 2d 201; *United States* v. *Appel,* 211 F. 495; *Matter of Meckley,* 50 F. Supp. 274, 137 F. 2d 310;

*Schleier* v. *United States,* 72 F. 2d 414; *Matter of Oliver,* 333 U. S. 257; *People ex rel. Falk* v. *Sheriff of N. Y. Co.,* 258 N. Y. 437; *Matter of Spector* v. *Allen,* 281 N. Y. 251; *Rutherford* v. *Holmes,* 5 Hun 317, 66 N. Y. 368.)

*Frank S. Hogan, District Attorney (Richard G. Denzer* and *Leonard E. Reisman* of counsel), for respondent. I. Appellant was willfully evasive and obstructive before the Grand Jury, and his conduct amounted to contumacious refusal to answer proper questions. (*People ex rel. Falk* v. *Sheriff of N. Y. Co.,* 258 N. Y. 437; *Matter of Steingut* v. *Imrie,* 270 App. Div. 34; *Ex parte Hudgings,* 249 U. S. 378; *Matter of Finkel* v. *McCook,* 247 App. Div. 57, 271 N. Y. 636; *United States* v. *Appel,* 211 F. 495; *Blim* v. *United States,* 68 F. 2d 484; *Schleier* v. *United States,* 72 F. 2d 414; *United States* v. *McGovern,* 60 F. 2d 880, 287 U. S. 650; *Matter of Meckley,* 50 F. Supp. 274.) II. Appellant was properly called, sworn and interrogated before the Grand Jury, and no violation of his constitutional rights thereby occurred. (*People* v. *Breslin,* 306 N. Y. 294; *Matter of Doyle,* 257 N. Y. 244; *People ex rel. Coyle* v. *Truesdell,* 259 App. Div. 282; *People ex rel. Hummel* v. *Davy,* 105 App. Div. 598, 184 N. Y. 30; *People* v. *Gillette,* 126 App. Div. 665; *People* v. *Bermel,* 71 Misc. 356.) III. Immunity statutes were operative here and, accordingly, appellant was properly called, sworn and required to answer questions responsively. (*People* v. *Sharp,* 107 N. Y. 427; *People* v. *Reiss,* 255 App. Div. 509, 280 N. Y. 539; *People ex rel. Hofsaes* v. *Warden of City Prison,* 277 App. Div. 398, 302 N. Y. 403; *People* v. *Anhut,* 162 App. Div. 517, 213 N. Y. 643; *People* v. *Leary,* 282 App. Div. 476; *Heike* v. *United States,* 227 U. S. 131; *Matter of Hood & Sons* v. *Du Mond,* 297 N. Y. 209; *Jongebloed* v. *Erie R. R. Co.,* 296 N. Y. 912.) IV. The mandate of commitment was sufficient and proper. (*Matter of Rotwein* [*Goodman*], 291 N. Y. 116.)

DYE, J. The defendant stands convicted of criminal contempt of court following a trial in the Court of General Sessions of the County of New York for having willfully refused to answer questions put to him by the Fourth Grand Jury, November, 1953, Term, New York County (Judiciary Law, § 750, subd. A, par. 5; *Matter of Finkel* v. *McCook,* 247 App. Div. 57, affd. 271 N. Y. 636).

On this appeal we are concerned only with the validity of the within proceeding which we may review even though not challenged at the trial (*Matter of Hood & Sons v. Du Mond,* 297 N. Y. 209, revd. on other grounds 336 U. S. 525; *Jongebloed v. Erie R. R. Co.,* 296 N. Y. 912).

The Fourth Grand Jury, November, 1953, Term of the County of New York, undertook an investigation to determine whether the Cardinal Agency, Inc., a domestic corporation doing an insurance business in New York County, was splitting commissions received on policies from various companies with certain officials of labor unions and other persons in violation of section 380 of the Penal Law and sections 5 and 113 of the Insurance Law.[1]

For the period under investigation, the books of the company showed that it had a gross income, viz.:

| | | |
|---|---|---|
| 1951 | — | $ 75,000 |
| 1952 | — | 186,000 |
| 1953 | — | 295,000 |

and that for the same period unitemized cash withdrawals were made under the headings " office expense ", " entertainment," " travel," and " promotion " aggregating, viz.:

| | | | |
|---|---|---|---|
| 1951 | — | $ 28,724.03 | |
| 1952 | — | 107,282.33 | |
| 1953 | — | 34,492.00 | (five months). |

The company books also showed that for the year 1952 the defendant personally spent at least $31,600.50 and for the five months of 1953, $34,492. The defendant, who at the time was the secretary and treasurer of the Cardinal Agency, Inc., and a one-half owner of its capital stock, was sworn and testified at hearings of the Grand Jury held November 24 and 25 and December 3 and 4, 1953. According to the Grand Jury minutes it does not appear that at or prior to the three sessions held before December 4th, the attention of the defendant witness was in any way called to the purpose of the inquiry and

1. The corporation had been organized in 1950, following the enactment of section 211 of the State Disability Benefits Law (Workmen's Compensation Law, art. 9, added by L. 1949, ch. 600), for the primary purpose of writing insurance to cover labor union welfare benefits payable under that act.

informed of his rights as a prospective defendant in a criminal proceeding, that he claimed his privilege against self incrimination or that he had signed a waiver.

Concededly, it was not until the session held December 4, 1953, that defendant was admonished and warned for the first time. He then claimed his privilege, whereupon the foreman of the Grand Jury granted him '' immunity for the crimes of conspiracy and for the crime of bribing labor officials '' and directed him to answer all questions on pain of '' prosecutions for perjury and possibly for criminal contempt ''. The defendant witness was then subjected to a lengthy and searching interrogation on matters relating to his personal use of company funds, including those he drew from the company and personally disbursed for '' entertainment '', '' promotional '' purposes, '' travel '' and '' expense ''. To this line of inquiry the defendant flatly denied that any part of such money was used for kickbacks. On the other hand, he had difficulty in remembering the names of the persons '' entertained '', the nature of the '' entertainment '', the times and places where the '' entertainments '' had been held, of what the '' promotional '' purposes consisted, the '' expenses '' he had to meet, the times when or the places to which he had traveled, and in no instance could he give any breakdown for the money spent for any of such purposes even though only a few months had elapsed between the alleged spending and the interrogation.[2] The Grand Jury finally excused him and, at the request of the assistant district attorney in charge, voted to cite him for criminal contempt. The within proceeding was then commenced.

The validity of the proceeding depends on whether the immunity conferred at the December 4th hearing was complete and coextensive with his constitutional protection against self incrimination as found by the court below or, as claimed by the defendant, was qualified and restricted by the limitations mentioned by the foreman of the Grand Jury. In other words, was the immunity granted as broad as the peril?

2. His lapse of memory concerning these important particulars was occasioned by an alleged "anxiety neurosis" from which he was suffering due to "tension, anxiety, fear and a feeling that something is going to happen" as testified to by a psychiatrist.

The answer depends on the scope and meaning attributable to section 2447 of the Penal Law (L. 1953, ch. 891, eff. September 1, 1953[3]). It provides in part:

" § 2447. *Witnesses' immunity.*

" 1. In any investigation or proceeding where, by express provision of statute, a competent authority is authorized to confer immunity, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and, notwithstanding such refusal, an order is made by such competent authority that such person answer the question or produce the evidence, such person shall comply with the order. If such person complies with the order, and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, then immunity shall be conferred upon him, as provided for herein.

" 2. ' Immunity ' as used in this section means that such person shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which, in accordance with the order by competent authority, he gave answer or produced evidence, and that no such answer given or evidence produced shall be received against him upon any criminal proceeding. But he may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury or contempt committed in answering, or failing to answer, or in producing or failing to produce evidence, in accordance with the order, and any such answer given or evidence produced shall be admissible against him upon any criminal proceeding concerning such perjury or contempt.

" 3. ' Competent authority ' as used in this section means:
* * *

" (c) The grand jury before which a person is called to answer questions or produce evidence, when such grand jury is expressly requested by the prosecuting attorney to order such person to give answer or produce evidence; * * *

---

3. Section 2447 was enacted at the Extraordinary Session of the Legislature upon the recommendation of the State Crime Commission, see Third Report, May 4, 1953, of the New York State Crime Commission (N. Y. Legis. Doc., 1953, No. 68).

" 4. Immunity shall not be conferred upon any person except in accordance with the provisions of this section." This statute was in effect when the defendant appeared before the Grand Jury.

By way of summary, in order to obtain the defined immunity, the witness must (1) claim his privilege, (2) be directed to answer, and (3) testify.

Prior to the enactment of section 2447, applicable immunity statutes (Penal Law, §§ 380–381 and 584[4]) provided, in substance, that a person is not excused from testifying on the ground of privilege, but that he may not be criminally prosecuted " for or on account of any transaction, matter or thing concerning which he may so testify ". In that form a witness who had not signed a waiver, obtained immunity automatically if he gave self incriminating testimony (*People ex rel. Coyle* v. *Truesdell*, 259 App. Div. 282). The immunity thus obtained was coextensive with and as broad in protection as his constitutional privilege against self incrimination (*People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253; *Matter of Doyle*, 257 N. Y. 244) and this was so even though he did not claim his privilege before answering (*People* v. *Sharp*, 107 N. Y. 427; *People* v. *Reiss*, 255 App. Div. 509, affd. 280 N. Y. 539). It followed that if he claimed his privilege and refused to answer, and if such refusal was at all reasonable, he could not be compelled to answer under pain of contempt, and, if compelled, an indictment could not be based on the evidence obtained (*Matter of Doyle, supra*; *People ex rel. Coyle* v. *Truesdell ,supra*; *People ex rel. Hummel* v. *Davy*, 105 App. Div. 598, affd. 184 N. Y. 30).

An exception to such generality was available whenever an investigation into a public policy matter was not aimed at the witness, whenever he failed to claim his privilege (*People* v. *Bermel*, 71 Misc. 356), but this was a limited exception, for if it could reasonably be said that the investigation was aimed at the witness himself, even though he claimed no privilege, his

---

4. Section 380 of the Penal Law, Bribery of Labor Representatives, had been amended by adding subdivision 3 (L. 1953, chs. 675, 891); section 381 of the Penal Law has been rewritten and amended (L. 1953, ch. 891, § 5); section 584 of the Penal Law, Witnesses' Immunity (conspiracy), has been amended (L. 1953, ch. 891, § 8) to provide that competent authority may confer immunity in accordance with the provisions of section 2447 of the Penal Law.

status as a prospective defendant was deemed sufficient to confer immunity automatically (*People* v. *Bermel, supra; People* v. *Gillette,* 126 App. Div. 665; *Counselman* v. *Hitchcock,* 142 U. S. 547; *People* v. *Singer,* 18 Abb. N. C. 96) and as a prospective defendant he obtained complete immunity if his testimony was compelled (*People* v. *Cahill,* 193 N. Y. 232; *People* v. *Reiss, supra*).

Under the rule enunciated in the *Gillette* case (*supra*) and long followed, it was deemed a violation of constitutional rights to examine a witness concerning his own acts and prosecution for perjury or contempt arising from such testimony was prohibited. The court below, notwithstanding that on this record the defendant is unquestionably cast in the role of a prospective defendant, has ruled that the contempt proceeding was properly brought. In so ruling, it took the view that the limitations mentioned by the foreman of the Grand Jury at the December 4, 1953, session did not serve to restrict or qualify the immunity conferred, since under section 2447 the foreman of the Grand Jury " had no power to limit the immunity ". Having reached the conclusion that the testimony given by the defendant witness at the December 4th session was available to support a charge of criminal contempt, it was an easy matter to also conclude that the testimony given at the three prior sessions was also available, for the reason that the witness had not claimed his privilege in advance of testifying.

Section 2447 was thus being construed as providing a new procedure for dealing with a prospective defendant witness which supersedes the rule in *People* v. *Gillette* (*supra*), and other cases. Such disapproval was on the theory that application of the so-called *Gillette* rule ofttimes led to the consequence of an inadvertent grant of absolution to persons later found to be criminals; that in order to relieve the District Attorney of the burden of deciding in advance whether the testimony sought was more valuable than the right to prosecute, the statute was designed to shift the decision in the first instance to the witness by requiring him to claim his privilege in advance of testifying, if he was to obtain immunity. In other words, it is the responsibility of the witness to alert the prosecutor as to his option of abandoning the inquiry if he does not wish to grant immunity, or to override the privilege asserted and accord immunity in

exchange for the testimony. However desirable and advantageous that may be in theory to the prosecutor in the conduct of an investigation into a public or private transaction, matter or thing, it is not at all consonant with constitutional protection accorded an individual when testimony is compelled as to his own acts or conduct.

Here the witness was being interrogated as to transactions and matters of such a nature that the prosecutor must have known in advance that he was placing the witness in the role of a prospective defendant. Nonetheless, as we have pointed out, at the first three sessions the witness was not informed of the purpose of the inquiry, was not advised of his rights or warned of the consequences of his refusal to testify from which it may be inferred he intended to use the testimony elicited in a later prosecution.

While it is agreed that a grand jury is a competent authority to confer immunity (Penal Law, § 2447, subd. 3, par. [c]) and that the immunity conferred shall be complete in any criminal proceeding other than for perjury or contempt (subd. 2), it does not follow that the limitations on the immunity attempted to be granted to this witness, in exchange for incriminating testimony, was coextensive with and as broad as his constitutional privilege.

True it is that section 2447 is designed as a complete immunity statute, but the immunity it contemplates is not operative until conferred by the Grand Jury or some other duly authorized agency mentioned in the statute. Here the immunity attempted to be conferred by the Grand Jury was incomplete, with the result that defendant was being compelled to give testimony in violation of his fundamental right against self incrimination. That being so, no proceeding for contempt may be predicated thereon. To excuse implications flowing from the limitations mentioned by this Grand Jury on the ground that it lacked authority to limit the complete immunity contemplated by the statute is contrary to sound administration of our Criminal Law and could very well lead to serious excesses on the part of overzealous prosecutors. Such danger is well illustrated by this case. If such procedure is allowed to stand the People could use the testimony given by this defendant witness at the first three sessions in prosecuting some substantive crime other

than conspiracy and bribery, since no waiver had been signed and no privilege claimed in advance. If a grand jury may place limitations as to the crimes immunized, even though the defendant witness claims his privilege, it means that the testimony thereafter compelled may be used for the twofold purpose of supporting charges of perjury or criminal contempt without losing any opportunities that might be developed for prosecution of a substantive crime.

We may not disregard the potential effect of such limitation. The defendant witness, a young layman, should not be condemned for accepting at its face value what the foreman of the Grand Jury told him. The immunity conferred was at best. a limited one — and, as it turned out later, an erroneous one. The defendant having relied on what he was told to his disadvantage should not be penalized. '' Punishment for a criminal contempt is a drastic remedy for willful wrong.'' (*Matter of Spector* v. *Allen*, 281 N. Y. 251, 259; *Rutherford* v. *Holmes*, 5 Hun 317, affd. 66 N. Y. 368.)

The orders should be reversed and the citation for criminal contempt should be dismissed.

CONWAY, Ch. J., DESMOND, FULD, FROESSEL, VAN VOORHIS and BURKE, JJ., concur.

Orders reversed, etc.