J. Irwin Shapiro, J.
The defendant Healey (hereafter sometimes referred to as the defendant) applies “ for an order dismissing the indictment herein upon the ground that the defendant was compelled to be a witness and testify against himself before the grand jury which found the said indictment ”.
He and three others stand indicted (in a nine-count indictment) for committing the crimes of conspiracy as a felony, extortion (seven counts), and attempted extortion.
The basic facts giving rise to the defendant’s contention that he is immune from prosecution are not in dispute, but for the purpose of discussing the law involved in connection with that contention a full statement of the underlying facts seems necessary.
From the affidavit of the Assistant District Attorney in charge of the investigation resulting in the instant indictment we find that: “ Defendant healey appeared before the G-rand Jury at its session held on July 24, 1961. He had first gone to the Indictment Bureau of the District Attorney’s Office in response to a 1 phone call made to him requesting his appearance. When he arrived, deponent discussed with healey the extent of his knowledge concerning the matters then being considered by the Grand Jury, healey indicated his intention to rely upon his constitutional right to refuse to testify. Deponent discussed the advisability of his willingness to testify, but he did not agree. He did appear before the Grand Jury, itself, on the same day — July 24, 1961 ”.
This appearance by the defendant before the Grand Jury, after his discussion with the Assistant District Attorney in charge, resulted from a subpoena then and there served upon him in a “ john doe ” investigation requiring him forthwith to appear before the G-rand Jury.
So far as material, the following is what there transpired when the defendant was questioned:
*1015 “ Q. Are you retired? A. Yes sir.
u Q. What are you retired from? A. I refuse to answer on the grounds that 1 cannot he compelled to testify against myself.
“ Q. Now Mr. Healy, I am going to tell you that you cannot refuse to answer questions unless you invoke your Constitutional privileges and state the reasons for refusing to answer questions. A. I have the same answer.
“ Q. Mr. Healy, if I tell you that I am going to insist that you answer questions, or else have the Foreman direct you to answer, I would advise that if you fail to answer we will seek to hold you in contempt, will you answers [sic] the questions then? A. Give me the questions.
“ Q. What are you retired from? A. I refuse to answer on the Constitutional grounds that I cannot he compelled to testify against myself.
“ Q. What is the basis for that refusal? A. What you told me this morning.
“ Q. What did I tell you? A. That I was going to be indicted.
“ Q. Didn’t I say that you would be indicted if you didn’t tell the truth? A. That I was going to be indicted and that was it.
“ Q. If you didn’t tell the truth, didn’t I tell you that? A. You did not.
“ Q. If I tell you now that if you don’t tell the truth we will seek an indictment against you, will that change your position? A. No.
“ Q. Under what circumstances would you testify? A. None.
“ Q. If I tell you Mr. Healy, that I will then request the Foreman of the Grand Jury to advise you that if necessary we will give you Immunity and then compel your answers, will you then answer the questions? A. I will answer: I have to answer then.
“ Q. You do realize that? A. Yeah.
“ Q. You realize that as a result of your former employment as a police officer, is that correct? A. No, it’s in the Constitution.
“ Q. And you want to follow the Constitution and don’t want to impede the investigation of this Grand Jury? A. No I do not.
‘1 Q. You would not tell a lie would you? A. No sir.
“ Q. You realize what telling a lie would constitute at this point, do you not? A. I know its perjury.
“ Q. You realize you have taken an oath and sworn to tell the truth? A. Yes.
“ Q. Do you feel that any answers you might give would incriminate you? A. I do.
*1016 “ Q. If I tell you now that I am going to ash the Foreman to excuse you and then to consider whether or not they will give you Immunity, in return for your cooperation, will you take that under advisement and then come bach and answer questions? A. I don’t understand you.
11 Q. If 1 tell you that I am going to ash the Foreman of the jury to give you Immunity from prosecution and then after they have decided to give you Immunity, I will then put certain questions to you and compel you to answer, do you, understand that? A. 1 understand that.
“ Q. Will you be willing to do that? A. As far as I am able.
“ Q. Do you realize even if you are given Immunity, it does not grant you Immunity from prosecution for perjury? A. I understand that.
“ Q. Do you realise that before I ash the Grand Jury to give you Immunity that I will have to talh to you outside, myself, for a minute? A. Alright.
11 Q. Do you realise Mr. Mealy that if, after Immunity is grcmted, you refuse to answer any questions, you will be held in contempt and face a possible jail sentence? A. 1 understand that.
“ Q. Did you discuss with anybody your appearance before this Grand Jury? A. No.
“ Q. Mr. Foreman, at this time I ask that the witness be excused for a minute. By Foreman: You may be excused.
“ Witness excused.” (Emphasis supplied.)
Subsequently, on the same day, i-iealey was recalled before the Grand Jury and was questioned, in part, as follows:
“ Q. Mr. Healey, did you ever receive any money from any other sergeant in the precinct to which you were attached? A. No.
“ Q. Did you ever give any other sergeant any money? A. No sir.
“ Q. Did you ever hear of the Sergeants Club? A. No.
* ‘ Q. What precinct were you assigned to ? A. The last was the 109.
“ Q. When were you there? A. December 1, 1955 to 1960, when I retired.
“ Q. All that time you never received any money from any other sergeant? A. No sir.
“ Q. Did you ever receive any money from Bichard Davis? A. Bichard Davis ? I don’t know him.
“ Q. Did you ever receive any money from him? A. I don’t know him even.
*1017 “ Q. Did you ever receive any money from William Lade? A. I did.
“ Q. You did? A. Yeah.
“ Q. What for? A. He gave it to me, that’s all.
“ Q. Well, how did it come about? A. 1 went to see him and he gave me money, five or six times.
“ Q. What did you do with the money? A. I kept it; spent it.
“ Q. How much did he give you? A. Sometimes fifty, sometimes seventy-five.
“ Q. Dollars? A. Yes.
“ Q. Tell us what he gave it to you for? A. I don’t know. I never done anything for him.
“ Q. I am glad you have decided to co-operate Mr. Healey. I am glad you have decided to tell the truth. At this point, I am going to give you a minute to catch your breath and sit out in the other room. Would you? A. You want me to sit out in the other room?
“ A. Just for a minute. Take your glass of water with you. (Witness leaves jury room.)
“ Witness excused.” (Emphasis supplied.)
In view of the conclusion to which I have come as to how this motion must be decided, it is not necessary to determine whether at that point in the proceedings healey had in fact already been given immunity from prosecution by the District Attorney so as to preclude his subsequent indictment. It should be pointed out, however, that the Assistant District Attorney had recalled the defendant healey for questioning after representing to him ‘ ‘ that I am going to ask the Foreman of the jury to give you Immunity from prosecution and then after they have decided to give you Immunity, I will then put certain questions to you and compel you to answer
Under such circumstances the defendant had a right to believe that the Assistant District Attorney was recalling him to testify only because “ they (the Grand Jury) have decided to give you Immunity” and that therefore he, the defendant healey, was compelled ‘ ‘ to answer ’ ’. The constitutional prohibition against compelling a person to be a witness against himself is a matter of substance; it is an unqualified right which every witness may exercise and of which he may be deprived only by being given absolution from prosecution.
The duty of a District Attorney under such circumstances is clear. He should be most circumspect to see that a witness is not misled or deceived. Certain it is that he himself should not by any act of his seek to circumvent the witness’ constitutional rights. (Cf. People v. Noble, 9 N Y 2d 571.) Therefore, *1018 were it necessary to a determination of this motion, I would not hesitate to hold that under the circumstances of this case the People of the State of New York would be estopped from claiming that healey was not given immunity from the instant prosecution when he was recalled to testify after being told, in effect, that he would be recalled only if he were given immunity.
On August 2,1961 and on August 11, 1961 — some weeks after healey’s appearance before them — certain other witnesses testified before the same Grand Jury and the indictment in this case was returned against healey and the three other defendants.
The first count of the indictment charges that the four defendants ‘ ‘ conspired among themselves — to commit crimes of extortion — in that the said defendants — conspired to obtain property from Frances M. Lade and Philip J. Davis, doing business as J & B Auto Body, and Frances M. Lade, doing business as J & B Auto Body, with their consent, by the wrongful use of fear induced by threats to do an unlawful injury to their property. ’ ’
One of the overt acts (No. 2) set forth in the first count of the indictment says that: “2 — In furtherance of the said conspiracy and to effect the objects thereof, and on or about and between January 1st, 1959 and June 30th, 1959, in the County of Queens, defendant Patrick Healey demanded and obtained a sum of money from William K. Lade, an agent of said Frances M. Lade.” (Emphasis supplied.)
The attempted extortion and the extortion counts in the indictment set forth the substantive crimes alleged to have been committed by the defendants in furtherance of the conspiracy set forth in the first count of the indictment.
It thus clearly appears, beyond peradventure of a doubt, that the subject matter of the indictment against healey deals in part with his having obtained moneys from William K. Lade who was an agent of Frances M. Lade.
It also seems clear that when the defendant was called to the Indictment Bureau of the District Attorney’s office he was a potential target of the investigation — a prospective defendant, for he was told by the District Attorney that if he did not testify “ we will seek an indictment against you ”. It is obvious that an indictment could not legitimately be sought against him if the District Attorney were not in possession of facts showing his complicity in the commission of a crime. The question, therefore, arises as to what his rights were when he was required — not requested — to appear and testify as a witness before the Grand Jury by virtue of the compulsion of a subpoena.
*1019 In order to obtain complete immunity from prosecution a witness appearing before a Grand Jury, be he a potential defendant or not, must (1) affirmatively claim his privilege against self incrimination, (2) be directed or ordered to answer by competent authority, such as a Grand Jury at the request of the District Attorney or other prosecutor, and (3) he must then testify. (People v. De Feo, 308 N. Y. 595, 602-604.)
The reason for this is that since the enactment of section 2447 of the Penal Law (eff. Sept. 1, 1953) a witness merely by testifying, does not, as theretofore, receive automatic immunity from prosecution as to “ any transaction, matter or thing” disclosed by him in his testimony. The purpose of the statute was “ To avoid the inadvertent conferring of immunity upon witnesses unsuspected of the wrongdoing they themselves ultimately disclosed ”. (People v. Laino, 10 N Y 2d 161, 172.)

That statute, salutary in purpose though it be, could not and does not have the effect of cutting down or whittling away the rights afforded to one as a witness by section 6 of article I of the Constitution of this State if he thereafter is named as a defendant in a criminal prosecution.

In People v. Steuding (6 N Y 2d 214, 216-217) the court said: “ By virtue of the Constitution of this State (art. I, § 6) — and it is solely the Constitution of New York with which we are now concerned —a prospective defendant or one who is a target of an investigation may not be called and examined before a Grand Jury and, if he is, his constitutionally-conferred privilege against self incrimination is deemed violated even though he does not claim or assert the privilege. * * * An automatic result of the violation of this constitutional privilege is that the defendant is protected not only from indictment based on any incriminating testimony which he may have given, but also from use of such evidence. And the right and protection thus accorded by the Constitution may not be taken away or cut down by statute.” (Emphasis supplied.)
In discussing the above quotation from People v. Steuding (supra) the same court in the Laino case (10 N Y 2d 161, 172, supra) said: “ In short, having violated the constitutional privilege of this defendant, the Attorney-General and the Grand Jury could not use the evidence thus obtained, in whole or in part, to support an indictment for any crime revealed thereby. The constitutional privilege against self incrimination is not limited to particular crimes. Here, the privilege was violated, it is true, because defendant was compelled to give testimony concerning his part in a possible conspiracy of corruption in the sale of tires to the city, but that testimony was none the *1020 less tarnished because it subsequently was used, at least in part, to support an indictment for a different crime. The violation of the privilege occurred when the testimony and records were given under compulsion of subpoena (People v. Gillette, 126 App. Div. 665, 667-670, supra; People v. Ferola, 215 N. Y. 285, 289-290, supra; People v. Seaman, 174 Misc. 792, 795, supra) and their subsequent use against defendant in a criminal prosecution of any hind was prohibited (People v. Steuding, supra).” (Emphasis by the court.)
The issue therefore on this record is (1) whether the fact that the indictment was returned by the same Grand Jury which concededly heard healey’s testimony and admissions under oath, compelled by subpoena, that he had had money transactions with William K. Lade and had obtained money from him on six or seven occasions mandates a dismissal of the indictment returned by that Grand Jury because of the violation of his constitutional privilege against self incrimination (People v. Steuding, supra, p. 217) and (2) if it does, whether reindictment is possible by another Grand Jury if the District Attorney has sufficient evidence to warrant an indictment which evidence is independent of and in no way comes from the “ evidence, links or leads furnished by ” healey, the prospective defendant, in his testimony. (People v. Laino, 10 N Y 2d 161, 173, supra.)
The position of the District Attorney that ‘ ‘ none of the testimony given by healey — whatever the extent thereof — was considered by the Grand Jury in connection with its determination that an indictment be found against healey and others ’ ’, and that ‘ ‘ no testimony given by healey was the basis' of any indictment found against him ” is an engagement in philosophical sophistry. It does not stand the acid test of scrutiny. Simply because the finding which has been handed up by the Grand Jury does not contain healey’s name as a witness before it cannot obliterate the undeniable fact that he was a witness before it and that the Grand Jury heard his admissions. To hold that his constitutional rights can be withdrawn from him by the arbitrary determination of the Grand Jury that he did not give testimony before it in connection with this indictment, when in fact he did so testify, is to reduce his constitutional guarantees to the vanishing point. Rights of a defendant charged with a crime, whether they be constitutional or statutory cannot thus be summarily nullified. Constitutional or statutory rights covering and protecting a defendant are not a paper canopy which shrivel and disappear at the behest of a Grand Jury, no matter how benevolent its purpose.
*1021 Under the circumstances, this particular Grand Jury, having heard the defendant’s testimony, without his having affirmatively waived immunity, was without power to mdict him. Its indictment as against him therefore may not stand.
The dismissal of the indictment as to healey is thus ordered not upon the theory that healey received immunity from prosecution but that his own testimony could not be used or considered against him, and that it was or may have been so used and considered by the Grand Jury which indicted him. The question, therefore, presents itself whether the District Attorney should have leave to resubmit the matter to another Grand Jury upon the theory enunciated in People v. Laino (supra) that reindictment is possible if sufficient evidence independent of that elicited by defendant’s inquisition or links or leads furnished thereby can be adduced to support the new indictment.
The record before me indicates that the defendant healey testified before the Grand Jury under the compulsion of a subpoena on July 24, 1961, and there revealed, then being one of the targets of the District Attorney’s investigation, some of his dealings wth William K. Lade. It was not until August 2, 1961 that the latter was first called as a witness before the Grand Jury. Under such circumstances the District Attorney may not be heard to say that the identity of Lade and his role as a material and necessary witness because of his status as the agent of Frances K. Lade, from whom the money in question was allegedly extorted, were not leads or links in the chain of evidence furnished by healey under testimonial compulsion before the Grand Jury on July 24, 1961.
If the defendant healey, a former police officer, is in fact guilty of the charges leveled against him by the Grand Jury, it is unfortunate that he cannot be prosecuted therefor, but a defendant’s constitutional rights may not be withdrawn from him because perforce in a particular case it will permit him to escape the hand of the law.
The beneficent provisions of the Constitution are there for all to be enjoyed and heeded. In this case the defendant enjoys its benefits because the Grand Jury did not heed its provisions.
Under the principles enunciated in People v. Steuding (supra), and People v. Laino (supra), I see no recourse but to dismiss the indictment in this case against the defendant healey without leave to the District Attorney to resubmit the subject matter to another Grand Jury. The motion of the defendant healey is, therefore, granted and as to him the instant indictment is dismissed.