THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SAMUEL CAVALIERI, Appellant.

First Department, April 15, 1971.

*Arnold E. Wallach* of counsel (*Joseph Panzer,* attorney), for appellant.

*Daniel J. Sullivan* of counsel (*Burton B. Roberts, District Attorney*), for respondent.

STEVENS, P. J. Even though immunity was conferred by the Grand Jury and the meaning thereof explained in simple language, there was a continuing, considered and contumacious refusal by defendant to answer questions which we find to be clearly relevant to the stated purpose of the inquiry. The

defendant was informed that no testimony, truthfully given, could be used against him and, further, any lead obtained from such testimony that might hurt him "in some criminal way" could not be so used. Moreover, it was made clear to the defendant that he was not the target of the investigation. Immunity when conferred by the Grand Jury includes both testimonial and transactional immunity (cf. Code Crim. Pro., § 619-c; *Matter of Gold* v. *Menna,* 25 N Y 2d 475). From the defendant's own testimony he understood that he was being subpoenaed to testify as a witness before the Grand Jury. Since he received several subpoenas and appeared pursuant thereto prior to the date of actual testimony, there was ample opportunity to consult with counsel had defendant so desired. Nor did he, on the occasion of his actual appearance before the Grand Jury, ask to be excused from the Grand Jury room in order to consult counsel. Indeed, if, as defendant asserts, he did not at any time confer with counsel prior to his appearance, defendant was remarkably alert and precise in asserting his constitutional privilege against self incrimination. Defendant admitted that he understood at least certain of the questions, which he refused to answer. Immunity having been properly conferred, defendant had no right to remain silent (*Matter of Gold* v. *Menna, supra*). Nor do we find the sentence of one year to be excessive.

The judgment entered June 26, 1970, should be modified on the law, to the extent of holding that the refusal of defendant to answer the questions contained in the multiple count indictment constituted, in effect, a single contempt with a maximum sentence of one year since all referred to a single area of inquiry, and it became clear, at the outset, that defendant would refuse to answer any questions (cf. *People* v. *Chestnut,* 26 N Y 2d 481, 491–492). As so modified, the judgment appealed from should otherwise be affirmed.

CAPOZZOLI, J. (dissenting). This is an appeal from a judgment convicting the defendant of criminal contempt (Penal Law, § 215.50), after a nonjury trial. The conviction is based on a refusal of the defendant to answer questions before a Bronx County Grand Jury.

The Grand Jury was engaged in an investigation of "a conspiracy to violate the gambling laws, loan sharking, taking of money illegally and putting them into legitimate business in Bronx County". The District Attorney, after having informed the defendant of the purpose of the investigation by the Grand Jury, addressed the defendant, in the presence of the Grand Jury, as follows: " I tell you now, the foreman of the Grand Jury

has told me to tell you that the Grand Jury has voted to give you immunity. Now, when the Grand Jury votes to give you immunity, it means if you are directed to answer questions by the foreman, of the Grand Jury, and since you have been granted immunity, anything you say under oath, and you have been sworn as a witness before the Grand Jury, cannot [sic] be used in evidence against you. It also means if you say anything that we can get a lead from, that may hurt you in some criminal way, that cannot be used in evidence against you."

After having made this statement to the defendant the District Attorney followed it up with the following: '' So that in effect, you cannot be prosecuted because of anything you say."

Later, on the same page, the District Attorney further said: '' By that I mean, you must answer questions, because there is no reason you cannot answer the questions at this time, since you cannot be prosecuted for it. * * * You are being walked away from any possible prosecution for anything that you say before this Grand Jury cannot be used against you."

Following the last quoted statement of the District Attorney, the defendant refused to answer all questions put to him on the ground that the answers would tend to incriminate him. The majority holds that immunity was conferred by the Grand Jury and that the failure of the defendant to answer questions thereafter was contumacious and contemptuous.

It is, of course, well settled that both Amendment V of the United States Constitution and section 6 of article I of the New York State Constitution protect one from being compelled to be a witness against himself. The New York statute, which bears upon this subject, was enacted in 1967 and is to be found in section 619-c of the Code of Criminal Procedure and is derived from section 2447 of the former Penal Law.

It prescribes the type of immunity that must be granted to a witness before he may be compelled to surrender his constitutional privilege against self incrimination and it also specifically designates those who are authorized to grant immunity. What is extremely important is the fact that it directs '' such person shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which, in accordance with the order by competent authority, he gave answer or produced evidence '' (Code Crim. Pro., § 619-c, subd. 2).

It is to be noted that there is a very important distinction between transactional immunity and testimonial immunity. The latter, sometimes known as '' use '' immunity, protects one from

using the testimony itself in any subsequent criminal proceeding. On the other hand, " transactional " immunity, under the last quoted section, is far more reaching and gives " absolute immunity against future prosecution for the offense to which the question relates ". (*Counselman* v. *Hitchcock,* 142 U. S. 547, 586.)

It has been repeatedly held that the immunity is not adequate if it does no more than assure that the testimony will not be used in evidence against one in a criminal prosecution. To force disclosure the immunity must be so broad that the risk of prosecution is ended altogether. Nor is he required to show, in order to make his privilege available, that the testimony which he declines to give is certain to subject him to prosecution. (*Matter of Doyle,* 257 N. Y. 244.)

In the last cited case (pp. 250–251) Chief Judge CARDOZO said: " The appellant is, therefore, privileged to refuse to answer questions that may tend to implicate him in a crime, unless by some act of amnesty or indemnity, or some valid resolution equivalent thereto, he has been relieved from the risk of prosecution for any felony or misdemeanor that his testimony may reveal. The immunity is not adequate if it does no more than assure him that the testimony coming from his lips will not be read in evidence against him upon a criminal prosecution. The clues thereby developed may still supply the links whereby a chain of guilt can be forged from the testimony of others. To force disclosure from unwilling lips, the immunity must be so broad that the risk of prosecution is ended altogether. [Citing cases.] "

Again (p. 257) the court said: " The immunity must be as broad as the privilege destroyed. "

It therefore becomes important to consider what was said to this defendant on the basis on which the prosecution and the majority are convinced that proper immunity was conferred. It must clearly appear that the witness is being offered transactional immunity, as distinguished from testimonial or use immunity. As was said by the court in *People* v. *De Feo* (308 N. Y. 595, 600): " The validity of the proceeding depends on whether the immunity conferred at the December 4th hearing was complete and coextensive with his constitutional protection against self incrimination as found by the court below or, as claimed by the defendant, was qualified and restricted by the limitations mentioned by the foreman of the Grand Jury. In other words, was the immunity granted as broad as the peril? "

As has been indicated, the District Attorney, in communicating to the defendant the instructions of the Grand Jury fore-

man that the Grand Jury voted to give him immunity, said "if you are directed to answer questions by the foreman of the Grand Jury * * * anything you say under oath * * * cannot be used in evidence against you. It also means if you say anything that we can get a lead from, that may hurt you in some criminal way, that cannot be used in evidence against you." It is true that, following the last quoted language, the District Attorney said: " So that in effect, you cannot be prosecuted because of anything you say ". But this was his interpretation of what the Grand Jury foreman had offered to the defendant. What had been offered was not complete transactional immunity, but assurance that nothing the witness would say under oath would be used in evidence against him. There was not even a reference to the particular section involved in this proceeding, viz: section 619-c of the Code of Criminal Procedure. The least that can be said about the language used by the District Attorney is that it was confusing and equivocal.

It is, of course, true that the Grand Jury proceeding was not a prosecution of the witness, but, rather, a general investigation. Hence, it has been held that the witness has no right to be represented by counsel in the technical sense. (*People* v. *Ianniello*, 21 N Y 2d 418.) However, under the circumstances of this case, the least that should have been done with this defendant was to arraign him before a Judge who might have given him the proper advice as to the type of immunity to which he was entitled. While the defendant testified that he asked for counsel, even if he did not do so, the proper and fair thing to have done was to see that he obtained counsel to be properly advised. As the court said in *People* v. *Ianniello* (pp. 424–425): " in light of current recognition of the importance of counsel in providing effective notice of rights, it is difficult to maintain that the witness is not entitled to the advice of his lawyer (cf. *Miranda* v. *Arizona*, 384 U. S. 436, 475; *Escobedo* v. *Illinois*, 378 U. S. 478, 486; *People* v. *Donovan*, 13 N Y 2d 148, 153). * * *

" The legal rights which may be critically affected before the Grand Jury, and concerning which the witness should be entitled to consult with his lawyer, are several. First, the witness may be put in a position of determining whether to assert or waive his privilege against self incrimination. * * * The witness who is not a target of the inquiry faces an even more critical decision for, unless he claims his privilege and thereby invokes immunity, his statements can be used against him substantively. Faced with a confusing variety of rules concerning the existence and scope of his privileges, a witness should not be required to make these choices unaided by his lawyer."

It is true that this defendant had received several Grand Jury subpoenas for prior days, but he was never brought into the Grand Jury room until March 7, 1969, the day when the alleged contempt took place. That is the day that he was offered this so-called immunity which is now under attack. That was the time when he was in need of legal advice as he did not know what his rights were after having been addressed by the District Attorney on the subject of immunity. In such a highly technical situation, where he had to understand the difference between transactional immunity, as distinguished from testimonial immunity, it is too much to expect that this defendant should have made a decision without the advice of counsel. In fact, the foreman of the Grand Jury, when asked if he knew the meaning of transactional immunity, answered truthfully and to the point " no ".

Since the complete immunity contemplated by section 619-c was not offered to this defendant by the Grand Jury, he was justified in continuing to assert his privilege.

For the reasons stated, I would reverse the judgment of conviction and dismiss the indictment.

MARKEWICH, KUPFERMAN and STEUER, JJ., concur with STEVENS, P. J.; CAPOZZOLI, J., dissents in an opinion.

Judgment, Supreme Court, Bronx County, rendered on June 26, 1970, modified, on the law, to the extent of holding that the refusal of defendant to answer the questions contained in the multiple count indictment constituted, in effect, a single contempt with a maximum sentence of one year. As so modified, the judgment is affirmed.