In the Matter of Leonard Felder, Petitioner, v. New York State Supreme Court et al., Respondents. (Appeal No. 1.)

In the Matter of Leonard Felder, Petitioner, v. New York State Supreme Court et al., Respondents. (Appeal No. 2.)

Fourth Department, March 4, 1974.

*Alfred P. Kremer* for petitioner.

*Louis J. Lefkowitz, Attorney-General (William J. Goldman* and *Ruth Kessler Toch* of counsel), for respondents.

MARSH, P. J. This is an article 78 proceeding to review the judgments of contempt imposed upon the petitioner, Leonard Felder, on July 17, 1973, and September 18, 1973, respectively, by the respondent, the Honorable GEORGE D. OGDEN, Justice of the Supreme Court, Monroe County. The alleged contempts occurred during a trial (Proceeding 1) and a retrial (Proceeding 2) of a murder prosecution of Richard S. Anderson, in the presence of the Justice presiding over the trials when petitioner refused to answer questions put to him by the District Attorney though immunity was purportedly conferred upon him by the Justice.

On July 16, 1973, petitioner was called to testify as a witness for the prosecution in Proceeding 1 for a homicide allegedly committed November 9, 1972. Upon being sworn as a witness and after a few questions had been asked by the District Attorney concerning events that took place on November 9, 1972, it became apparent that the petitioner intended to invoke his Fifth Amendment privilege against self incrimination. Parenthetically it should be noted that although the petitioner had been no-billed by a Monroe County Grand Jury for the same murder for which Anderson was then being tried, petitioner had been indicted on December 22, 1972 and was awaiting trial for the crime of hindering prosecution, first degree, as a result of his alleged activities on November 9, 1972. After he had invoked his constitutional privilege against self incrimination, the People requested that petitioner " be given immunity from any prosecution for the crime of murder arising out

of the death of '' the decedent. The District Attorney then stated that '' our request (for immunity) is limited to those questions concerning his (petitioner's) conduct with the defendant Anderson and with the victim William Alexander. *The People are not requesting any immunity beyond that.*'' (Emphasis supplied.)

The Justice presiding over the Anderson trial granted the District Attorney's request, and immunity was conferred '' only for the prosecution of any murder charge that might arise out of the facts specified to.'' When petitioner continued to refuse to answer any question concerning the activities of November 9, 1972, the Trial Justice directed him to answer '' keeping in mind that you [petitioner] have already been granted immunity from prosecution for this murder.'' When petitioner still refused to answer, he was held to have committed a criminal contempt in the presence of the court. After noting the contempt, the court adjourned the sentencing until the next day, July 17, 1973.

On July 17, 1973, the court imposed sentence upon the petitioner for contempt pursuant to section 751 of the Judiciary Law. The court ordered that the petitioner be confined in the Monroe County Jail for a term of 30 days and imposed a fine of $250. The court further ordered that if the fine was not paid, an additional 30 days of confinement in jail would be imposed, or as much thereof as shall have passed before the fine was paid.

As a result of the jury's inability to reach a verdict in the first trial, Proceeding 2 was commenced to retry the case. Once again, when called as a witness, the petitioner invoked his Fifth Amendment privilege and refused to answer any question relating to the events of November 9, 1972. At this point, the District Attorney requested the court to grant petitioner immunity '' insofar as any criminal activity is concerned arising out of the incident of November 9, 1972.'' After the trial court granted the requested immunity, the petitioner again refused to answer any questions after being directed to do so by the court. Petitioner's attorney then informed the court that petitioner was under indictment for the crime of grand larceny third degree and that his testimony in this proceeding might incriminate him concerning that charge. At this point, the District Attorney responded as follows: '' Your Honor, if that is the only thing that is preventing this witness from testifying on this particular case, then I request that that indictment be included in the scope in the grant of immunity given by this court.''

4

The court then conferred immunity as follows: "Your motion is granted. Immunity is granted from prosecution under the indictment charging this defendant [petitioner] with grand larceny in the third degree, as detailed by counsel here."

The District Attorney then began to question petitioner once again regarding the events of November 9, 1972. When the petitioner refused to answer any of seven questions, relating to such events, the court found and adjudged petitioner guilty of seven acts of contempt, and ordered that he be confined in the Monroe County Jail for a period of 30 days for each contempt totaling 210 days.

CPL 50.10 defines "immunity" as follows: "1. 'Immunity.' A person who has been a witness in a legal proceeding, and who cannot, except as otherwise provided in this subdivision, be convicted of any offense or subjected to any penalty or forfeiture *for or on account of any transaction, matter or thing concerning which he gave evidence therein*, possesses 'immunity' from any such conviction, penalty or forfeiture. A person who possesses such immunity may nevertheless be convicted of perjury as a result of having given false testimony in such legal proceeding, and may be convicted of or adjudged in contempt as a result of having contumaciously refused to give evidence therein." (Emphasis supplied.)

CPL 50.20 entitled "Compulsion of evidence by offer of immunity", provides:

"1. Any witness in a legal proceeding, other than a grand jury proceeding, may refuse to give evidence requested of him on the ground that it may tend to incriminate him and he may not, except as provided in subdivision two, be compelled to give such evidence.

"2. Such a witness may be compelled to give evidence in such a proceeding notwithstanding an assertion of his privilege against self-incrimination if:

"(a) The proceeding is one in which, by express provision of statute, a person conducting or connected therewith is declared a competent authority to confer immunity upon witnesses therein; and

"(b) Such competent authority (i) orders such witness to give the requested evidence notwithstanding his assertion of his privilege against self-incrimination, and (ii) advises him that upon so doing he will receive immunity.

"3. A witness who is ordered to give evidence pursuant to subdivision two and who complies with such order receives immunity. Such witness is not deprived of such immunity

because such competent authority did not comply with statutory provisions requiring notice to a specified public servant of intention to confer immunity.

"4. A witness who, without asserting his privilege against self-incrimination, gives evidence in a legal proceeding other than a grand jury proceeding does not receive immunity.

"5. The rules governing the circumstances in which witnesses may be compelled to give evidence and in which they receive immunity therefor in a grand jury proceeding are prescribed in section 190.40."

Subdivision 1 of section 751 of the Judiciary Law provides:

"1. Except as provided in subdivisions (2) and (3), punishment for a contempt, specified in section seven hundred and fifty, may be by fine, not exceeding two hundred and fifty dollars, or by imprisonment, not exceeding thirty days, in the jail of the county where the court is sitting, or both, in the discretion of the court. Where a person is committed to jail, for the nonpayment of such a fine, he must be discharged at the expiration of thirty days; but where he is also committed for a definte time, the thirty days must be computed from the expiration of the definite time. Such a contempt, committed in the immediate view and presence of the court, may be punished summarily; when not so committed, the party charged must be notified of the accusation, and have a reasonable time to make a defense."

The Attorney-General argues that CPL 50.20 "does not mandate conferral of transactional immunity upon a witness", and that the same section "permits the court to limit the scope of immunity to those areas related to the elicited testimony." No statutory or decisional authority is cited in support of these contentions, and no such authority is known to this court. To the contrary, the language of subdivision 1 of CPL 50.10, and recent decisions of the Court of Appeals indicate that the New York rule, unlike the Federal statute, requires that full "transactional immunity" be conferred upon the witness before he is obligated to relinquish his privilege against self incrimination.

In *People* v. *De Feo* (308 N. Y. 595) the Court of Appeals held that a grand jury witness, who had been granted immunity for the crimes of conspiracy and bribery, could not be held in criminal contempt for his subsequent refusal to answer the grand jury's inquiries because section 2447 of the former Penal Law [1] required

1. Subdivision 2 of section 2447 defined "immunity" as meaning "that such person shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which * * * he gave answer or produced evidence, and that no such answer given or evidence

that the witness be afforded complete "transactional immunity" before his testimony could be properly compelled by the grand jury. In so holding, the Court of Appeals stated (p. 602): "The immunity thus obtained was coextensive with and as broad in protection as his constitutional privilege against self incrimination * * * It followed that if he claimed his privilege and refused to answer, and if such refusal was at all reasonable, he could not be compelled to answer under pain of contempt, and, if compelled, an indictment could not be based on the evidence obtained".

As pointed out by Professor Robert A. Barker in his review of the history of New York's immunity statutes in a 1971 Law Review article[2] "It had generally been assumed in New York that transactional immunity applied [citing *People* v. *Ianniello*, 21 N Y 2d 418 (1968), and *People* v. *Tomasello*, 21 N Y 2d 143 (1967)], but some doubt arose in *People* v. *La Bello* [24 N Y 2d 598 (1969)] where, in dictum, the majority opinion favored the concept of testimonial immunity. Eight months later, however, in *Gold* v. *Menna* [25 N Y 2d 475 (1969)], the Court of Appeals expressly overruled *La Bello's* purported rejection of transactional immunity. It was noted that the words of the statute [CCP § 619-c [2]] conferred immunity to cover ' any transaction, matter or thing' concerning which the witness might testify and that the case law in New York favored the transactional approach. *The CPL retains the concept of transactional immunity* [CPL § 50.10 (1)] and, *read with the Gold opinion, that concept seems now to be firmly anchored.*" (Emphasis supplied.)

In *People* v. *Masiello* (28 N Y 2d 287), the Court of Appeals reversed a conviction for criminal contempt because a grand jury witness was afforded only limited testimonial immunity and not the broad transactional immunity provided by subdivision 2 of section 619-c of the Code of Criminal Procedure. In reversing Masiello's criminal contempt conviction, the Court of Appeals quoted (p. 291) approvingly from the *De Feo* case (308 N. Y. 595, 604, *supra*) as follows: "Here the immunity attempted to be conferred by the Grand Jury was incomplete, with the result that defendant was being compelled to give tes-

---

produced shall be received against him upon any criminal proceeding." This section of the former Penal Law should be compared with the definition of immunity contained in subdivision 1 of CPL 50.10. It would appear clear that both statutes afford the witness "transactional immunity."

2. 38 Brooklyn L. Rev. 327, Evidentiary Aspects of New York Criminal Procedure Law, Fall 1971.

timony in violation of his fundamental right against self incrimination. That being so, no proceeding for contempt may be predicated thereon.''

In *People* v. *Mulligan* (29 N Y 2d 20) the Court of Appeals once more affirmed the fact that New York's immunity statute (Code Crim. Pro., § 619-c, subd. 2) provided for '' transactional immunity ''. However, New York's highest court held (p. 23) that it was error to dismiss Mulligan's indictment for contempt because '' the immunity conferred upon Mulligan was as broad as the constitutional privilege against self incrimination '' and, therefore, '' he could not assert that privilege and refuse to testify.''

Applying the case law to the factual situation obtaining in Proceeding 1, it seems quite obvious that petitioner was offered far less than '' transactional immunity '' in return for his testimony. Despite the fact that the petitioner was under indictment for hindering prosecution, first degree, at the time his testimony was sought by the People, the District Attorney specifically requested, and the trial court subsequently conferred, immunity '' only for the prosecution of any murder charge that might arise out of the facts specified to.'' Thus, in accordance with the trial court's limited conferral of immunity, petitioner could by testifying have incriminated himself on the hindering prosecution charge. That being the case, his testimony was sought to be compelled in violation of his fundamental right against self incrimination, and, therefore, no finding of criminal contempt may be predicated thereon.

Proceeding 2 presents a not dissimilar situation because petitioner, while afforded protection from the murder, hindering prosecution and the grand larceny charges, was not afforded '' transactional immunity ''. He was not given protection from '' *any* transaction, matter or thing concerning which he '' might give evidence (emphasis supplied). Instead he had only immunity from the three specified crimes. Thus, the immunity conferred was not complete and coextensive with his constitutional protection against self incrimination.

Petitioner's convictions for criminal contempt should be reversed and the charges dismissed.

WITMER, SIMONS, MAHONEY and GOLDMAN, JJ., concur.

Petitions unanimously granted without costs, judgments reversed and charges dismissed.