In the Matter of JAMES J. O'NEIL, Petitioner, v THEODORE KASLER, as Justice of the Supreme Court, Respondent.

Fourth Department, July 12, 1976

*Philip B. Abramowitz* for petitioner.

*Edward C. Cosgrove, District Attorney (Judith Manzella* of counsel), for respondent.

GOLDMAN, J. Petitioner, James Jack O'Neil, brings this article 78 proceeding, under authority of section 752 of the Judiciary Law to review a mandate of Supreme Court, Erie County, which summarily punished him for criminal contempt. The mandate recites that petitioner, having been sworn as a witness at a criminal trial, refused to answer questions put to him by the prosecutor even though the court had advised him that he had full transactional immunity. The mandate provided that petitioner was to be committed to jail for 30 days unless he should earlier agree to answer the questions.

Petitioner's principal contention is that the court never actually ordered him to answer the prosecutor's questions, as required by CPL 50.20 (subd 2, par [b]). That procedural defect, he claims, rendered the purported grant of immunity ineffective. He therefore argues that his refusal to answer was lawful and cannot be the basis for punishment for contempt.

The alleged contempt occurred during the trial of one William Graham upon charges not disclosed in the record before us. Immediately after petitioner was called as a prosecution witness, a conference in chambers was held at the instance of the attorneys for defendant Graham. At that conference petitioner was represented by separate counsel. In the colloquy that ensued, the prosecutor took the position that petitioner could receive immunity only on a piecemeal, question-by-question basis and not by a single immunity grant. Graham's attorneys contended that the law did not require immunity to be granted on such a "piece by piece" basis, and that the procedure recommended by the prosecutor would cause petitioner to invoke the Fifth Amendment, perhaps repeatedly, in front of the jury, to the prejudice of Graham. They threatened to move for a mistrial if that should occur. The prosecutor eventually suggested a procedure whereby petitioner, in the absence of the jury, would be sworn and instructed as to the scope and extent of immunity allowed him, after which it would be ascertained whether he was willing to answer questions. The prosecutor expressed willing-

ness to accord petitioner immunity to the full extent allowed by law, to encompass even perjury which petitioner may have committed in prior testimony before the Grand Jury. The court agreed to "grant that immunity pursuant to the District Attorney's request", but intimated some doubt whether a grant of immunity from Grand Jury perjury was legally possible and stated positively that petitioner could not be given immunity from perjury committed during the trial. The court stated that if petitioner "invokes the Fifth Amendment before this jury, I will summarily punish him for contempt and he will leave this courtroom in custody to the jail".

Petitioner's attorney, however, stated that he would still advise petitioner to invoke his privilege because the proferred immunity would not be broad enough to protect him from prosecution for perjury. He first expressed doubt that a grant of immunity for Grand Jury perjury could validly be given, and noted that even if it could, there would certainly be no immunity for perjury upon the trial. Secondly, he contended, in order to convict petitioner of perjury it would be necessary to show only that he made two inconsistent statements under oath, but not necessary to show which was true and which was false. Hence, he concluded that petitioner still ran the risk of "being charged with committing perjury here for a truthful statement made here inconsistent with his grand jury testimony", so that "the immunity being granted is not fully coextensive with his privilege against self-incrimination".

After the court reiterated its position that petitioner "is not getting any immunity from perjury in this trial", petitioner was sworn in open court, in the jury's absence. He gave his name to the crier, but invoked his privilege when asked his address. The prosecutor then told petitioner that he intended to question him "relative to any knowledge that you may have with respect to the arrest and subsequent prosecution of Henry Ralph Anderson", and asked if petitioner would "respond to any questions that I may ask of you". Petitioner replied, "I refuse to answer on the grounds it may incriminate me". He gave the same response when asked if he had been called before the grand jury and granted immunity.

The prosecutor then explained the immunity he was prepared to request the court to grant petitioner, as follows: "Q. I state to you, Mr. O'Neil, that any questions that I may ask of you during the course of this proceeding, that you have full transactional immunity which encompasses, I will define im-

munity for you. A person who has been a witness in a legal proceeding and who cannot, except as otherwise provided in this subdivision be convicted of any offense or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he gave evidence, therein possesses immunity from such conviction, penalty or forfeiture. A person who possesses such immunity may nevertheless be convicted of perjury as a result of having given false testimony in such legal proceeding, and may be convicted of or adjudged in contempt as a result of having contumaciously refused to give evidence therein. I state to you, Mr. O'Neil, in the presence of the Court that any question during the course of this proceeding that the Court deems a relevant and material question, whether on direct examination or on cross examination, I am prepared to recommend to the Court, to have the Court direct you to answer that question, and in answering it, sir, I advise you that the law of the State of New York will convey to you complete immunity with respect to your response, during this proceeding, with the exception of perjury during this proceeding. That encompasses any perjury that would have—or, that encompasses any perjury that may have been committed before the grand jury upon your appearance on November 4, 1975. With that understanding of the immunity grant that I am prepared to direct the Court to direct you to answer any question relevant to this proceeding, both on direct examination and on cross examination. Will you respond to the questions that I may ask of you, or Mr. Condon will ask of you?"

Petitioner responded "I refuse to answer on the grounds it may incriminate me". At that point, petitioner's counsel reiterated his reason for advising petitioner to invoke his privilege, which was that the proferred immunity "is not coextensive with his privilege against self-incrimination".

Then the following occurred:

"THE COURT: All right. Mr. Witness you have heard the statement of your attorney, Mr. Gary Forsyth. You have heard the statement of the District Attorney, Mr. Joseph McCarthy who specifically read to you the extent of the immunity that he is requesting this Court to grant to you pursuant to Sections 50.10, Section 50.20 and Section 50.30 of the Criminal Procedure Law. And, I, as a competent authority to grant such immunity pursuant to Section 50.20, subdivision 2A and B, hereby state to you, that I hereby give you full

transactional immunity as stated by the District Attorney, with the exception of any perjury, as a result of having given false testimony in this legal proceeding. *If you still insist on asserting your Fifth Amendment privilege, I will punish you immediately, in contempt of this Court, and I shall sentence you to thirty days in the Erie County Penitentiary, forthwith.* If you testify to the extent of the transactional immunity granted—requested by the District Attorney, and which I hereby grant you, no such sanctions will be applied. Have you heard my statement? (emphasis supplied)

"THE WITNESS: Yes, sir.

"THE COURT: All right. I hereby grant you full transactional immunity concerning your testimony in this case. You will testify?

"THE WITNESS: No, Your Honor.

"THE COURT: You will not? You will assert your privilege?

"THE WITNESS: I plead the Fifth.

"THE COURT: You plead the Fifth. All right. The Court hereby sentences you to thirty days in the Erie County Penitentiary."

Respondent's answer raises two objections in point of law: first, that the affidavit-petition is not properly verified; and secondly, that it is signed not by petitioner but by his attorney, who is not the real party in interest.

An article 78 petition is required to be verified (CPLR 7804, subd [d]), and the verification of a pleading must ordinarily be made by the party, but may be made by his attorney "if all the material allegations of the pleading are within the personal knowledge of * * * the attorney" (CPLR 3020, subd [d], par 3). However, if the verification is made by one other than the party, "he must set forth in the affidavit the grounds of his belief as to all matters not stated upon his knowledge and the reason why it is not made by the party" (CPLR 3021). Because all of the material facts here are contained in the mandate of commitment and the pertinent parts of the trial transcript, all of which are annexed to the petition as exhibits, it seems fair to conclude that the petition's material allegations are upon the attorney's personal knowledge. However, the petition does not allege that they are, nor does it explain why the verification is not made by petitioner himself. To that extent, the petition does violate the requirements of CPLR 3021.

Nevertheless, we overrule respondent's objections in point of law on the ground that he waived them by not giving "notice with due diligence to the attorney of the adverse party" of his intent to treat the petition as a nullity (CPLR 3022). The court in *State of New York v McMahon* (78 Misc 2d 388, 389), referring to CPLR 3022, stated: "Due diligence has been held to mean 'within twenty-four hours' *(Westchester Life v. Westchester Mag. Co.,* 85 N.Y.S. 2d 34). A party who waits longer before giving notice should be held to have waived the objection". (Accord, D. Siegel, Practice Commentaries in McKinney's Cons Laws of NY, Book 7B, C3022:2, p 396.) Petitioner states, without contradiction, that respondent never notified him of any objection to the sufficiency of the verification until the answer was served, some eight days after service of the petition.

Respondent next contends that petitioner has waived his objection that the court's failure to *order* him to answer resulted in an invalid grant of immunity, because he did not raise that objection at trial when the matter could have been corrected. The record supports respondent's claim that petitioner, during the trial, never contended that a direct, specific order to answer questions was necessary for a valid grant of immunity. Instead, he argued that the proferred immunity would not extinguish his privilege because it was not broad enough to protect him from prosecution for perjury—a contention that he has now abandoned.

For his waiver argument, respondent relies on the following cases: *People v Tutt* (38 NY2d 1011, 1013) [defendant, having failed at suppression hearing to raise question whether he was warned that his right to counsel included right to presence of counsel at on-the-scene questioning, "may not then be heard to complain on appeal"]; *People v Di Stefano* (38 NY2d 640, 647 [defendant's claim that application to amend eavesdropping warrant was untimely was "deemed to be waived" by failure to raise timeliness issue at the suppression hearing]; *People v Robinson* (36 NY2d 224) [because defendant failed to object to, or request clarification of, confusing and misleading jury charge, he preserved no question of law for Court of Appeals]; *People v Pobliner* (32 NY2d 356, 367) [defendant, who for tactical reasons had opposed prosecutor's suggestion at trial that there be hearing on legality of wiretap, thereby waived any right to such hearing]; *People v Matthews* (25 NY2d 870) [conviction affirmed against contention, *inter alia,*

that jury charge was erroneous, when defendant had failed to request the desired charge or except to the charge as given]. Accordingly, it might be held that petitioner waived his procedural objection by failing to raise it when corrective steps could easily have been taken.

Although this may be dispositive of the issue, we are of the opinion that upon the merits petitioner should not prevail. A court is empowered to punish a person for criminal contempt only for certain specific acts, including "[c]ontumacious and unlawful refusal", after being sworn as a witness, "to answer any legal and proper interrogatory" (Judiciary Law, § 750, subd A, par 5).

Section 750 of the Judiciary Law does not in terms require that a witness be "ordered" to answer before he can be held in contempt for refusal, but petitioner asserts that a question is not "a legal and proper interrogatory", when asked of a witness who invokes his privilege against self-incrimination, unless that witness's privilege is extinguished by a valid grant of immunity in accord with CPL 50.20 (subd 2) which does require the giving of an order to answer. That subdivision provides:

"2. Such a witness may be compelled to give evidence in such a proceeding notwithstanding an assertion of his privilege against self-incrimination if:

"(a) The proceeding is one in which, by express provision of statute, a person conducting or connected therewith is declared a competent authority to confer immunity upon witnesses therein; and

"(b) Such competent authority (i) orders such witness to give the requested evidence notwithstanding his assertion of his privilege against self-incrimination, and (ii) advises him that upon so doing he will receive immunity."

A court is a "competent authority" to confer immunity upon a trial witness, "but only when expressly requested by the district attorney to do so" (CPL 50.30).

Accordingly, if the statute is read strictly, immunity can be granted to a trial witness only by compliance with the following five-step procedure:

1. The witness must assert his privilege against self-incrimination. CPL 50.20 (subd 4) plainly provides that a trial witness who does not assert his privilege does not receive immunity.

2. The District Attorney must expressly request the court to

confer immunity; otherwise the court does not become a "competent authority" to do so (CPL 50.30).

3. The court must then order the witness to give the requested evidence despite his assertion of privilege (CPL 50.20, subd 2, par [b], cl [i]).

4. The court must advise the witness that upon complying with the order he will receive immunity (CPL 50.20, subd 2, par [b], cl [ii]).

5. The witness must comply with the order, and by so doing receives immunity (CPL 50.20, subd 3).

Petitioner's argument is that step 3 was never complied with, since the court never in so many words "ordered" him to testify. Therefore, petitioner concludes, immunity never attached and his continued refusal to answer was lawful and not punishable as a contempt.

Respondent first responds, citing section 750 (subd A, par 5) of the Judiciary Law that it was not necessary for petitioner to be ordered to answer before he could be held in contempt. We reject this argument and conclude that section 750 of the Judiciary Law must be read together with CPL 50.20, which provides, in subdivision 1, that a witness who refuses to give evidence on self incrimination grounds "may not * * * be compelled to give such evidence" except in accordance with the procedure prescribed in subdivision 2, which includes the requirement that a court order the witness to give evidence.

Respondent's second argument is that "there was substantial compliance with the requirements of the statute regarding the grant of immunity". Whether there was substantial compliance depends, at least in part, on the statute's intended purpose. A brief account of the statute's history will serve to make that purpose clear. Prior to 1953, the statutes of New York contained numerous individual immunity provisions relating to civil, criminal and administrative proceedings, under which immunity was *automatically* conferred upon any witness who was called and testified, even if he took no affirmative step to invoke the privilege (Denzer, Practice Commentary in McKinney's Cons Laws of NY, Book 11A, CPL 190.40, p 123). Long before 1953, however, the New York Law Revision Commission had come to recognize that the "automatic" immunity system was subject to manipulation by witnesses. A 1942 report of the commission, recommending changes in immunity statutes relating to certain civil actions,

proceedings and investigations, described the problem.[1] The report also noted, disapprovingly, that the automatic immunity provision permitted a witness to acquire immunity "without any determination by a person who represents the state that the testimony to be obtained justifies the relinquishment by the state of its action against the witness" (id., p 354). As a safeguard to the State's interest, the report recommended that immunity be granted only to a witness who "has claimed his privilege * * * and is nevertheless compelled to give testimony" (id., p 354). The requirement that the witness positively assert his privilege would, in the commission's view, notify "the person representing the state * * * that the witness regards the testimony as incriminating" and afford "an opportunity to weigh the interests of the state against the value of the particular testimony sought" (id., p 355). (See, also, 1943 Report of NY Law Rev Comm, pp 47-49) where the commission advanced the same reasons in support of other proposed legislation.

In a 1953 report, the New York State Crime Commission adopted the Law Revision Commission's view by recommending "that legislation be adopted to accomplish the following:

"A. Require that before immunity may be obtained: (1) the witness must in good faith claim his privilege against self-incrimination; (2) he must be directed by competent authority to testify, notwithstanding his claim of privilege; and (3) he must testify pursuant to such direction.

---

1. "The immunity provision in most of these statutes, however, is so broad and in some respects so indefinite as to afford to a criminal an opportunity to secure his own immunity through a collusive agreement with a friendly person or through some other device whereby his appearance as a party or witness in a particular action, proceeding or investigation would be required, and his self-incriminating testimony sought solely for the purpose of avoiding prosecution and punishment for the crime disclosed. A typical instance of such self-immunization is a collusive agreement between a judgment debtor and a judgment creditor whereby the former would be called upon to testify in a proceeding supplementary to judgment, and by disclosing a crime committed by him would gain immunity. Another instance of abuse is a collusive agreement with an assignee for the benefit of creditors for the appearance of the assignor as a witness in the proceeding. A corporate officer guilty of some offense might similarly procure a friendly stockholder to institute an action or proceeding for the specific purpose of conferring immunity upon him.

"Commercial crimes may frequently be inherent in transactions for which a civil remedy is given to a class of persons which may well include persons friendly to the criminal. Hence, the problem of securing enforcement of the rights of defrauded parties by civil remedy, without giving an 'immunity bath' to the criminal unnecessarily or as a result of his own deliberate efforts to that end, is a serious one." (1942 Report of NY Law Rev Comm, pp 353-354.)

"B. Define the term 'competent authority' generally as meaning: (a) in all criminal and civil proceedings, the court on application or consent of the district attorney; (b) in all other proceedings or investigations, (i) a majority of a legislative committee, commission, board or similar authority, or its counsel expressly authorized to accord immunity by directing testimony, or (ii) the head of a state department or other agency or a commissioner or similar officer, or his deputy expressly authorized to accord immunity by directing testimony.

"C. Provide that the witness shall nevertheless be liable to prosecution for contempt or perjury committed in the course of his testimony." (Third Report of NY Crime Commission, 1953, pp 15-16; NY Legis Doc., 1953 No 68, pp 15-16.)

The upshot of that recommendation was the enactment of section 2247 of the former Penal Law (L 1953, ch 891, § 1, eff Sept. 1, 1953).

By section 78 of chapter 681 of the Laws of 1967 (eff Sept. 1, 1967) the essential features of section 2247 of the former Penal Law were carried forward at section 619-c of the Code of Criminal Procedure and the requirement of an "order" by a "competent authority" was retained in this language:

"§ 619-c Witnesses' immunity. 1. In any investigation or proceeding where, by express provision of section six hundred nineteen-d of this chapter or any other statute, a competent authority is authorized to confer immunity, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and, notwithstanding such refusal, an order is made by such competent authority that such person answer the question or produce the evidence, such person shall comply with the order. If such person complies with the order, and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, then immunity shall be conferred upon him, as provided for herein." After the enactment of the Criminal Procedure Law (L 1970, ch 996, § 1, eff Sept. 1, 1971), the requirement of an "order" by a "competent authority" survived in CPL 50.20 (subd 2).[2]

---

2. One notable change wrought by CPL was the inclusion of a separate immunity provision pertaining to grand jury witnesses (CPL 190.40) which does not require that they be "ordered" to give evidence before the evidence is privileged. Section 2447 of the former Penal Law and section 619-c of the Code of Criminal Procedure had governed the conferral of immunity upon grand jury and trial witnesses alike. CPL

From the history of CPL 50.20, it is plain that the statute's main thrust is to assure that a prosecutor will have advance warning that his questions may provoke incriminating responses, so that he can make a better-advised choice whether the value of the evidence sought from a witness outweighs the State's interest in prosecuting him for such wrongdoing as his testimony may reveal. The cases support this interpretation of the statute *(People v La Bello,* 24 NY2d 598, 605 [section 2247 of the former Penal Law aimed to prevent the automatic, accidental and misguided conferral of immunity on witnesses by requiring them to assert their privilege]; *People v Laino,* 10 NY2d 161, 172 [section 2447 of the Penal Law was enacted "(t)o avoid the inadvertent conferring of immunity upon witnesses unsuspected of the wrongdoing they themselves ultimately disclosed"]; *People v De Feo,* 284 App Div 622, 629, revd on other grounds 308 NY 595; *People v Tenaglia,* 30 Misc 2d 1013, 1019; *People v Feinberg,* 19 Misc 2d 433, 436). Thus the requirement that the witness be "ordered" to answer questions plays a relatively minor role in the statutory scheme and is not essential in every case to the achievement of the Legislature's purpose.

We conclude that the term "ordered", as used in CPL 50.20 (subd 2) is not a term of art and need not be given its precise literal meaning, at least where, as here, the record leaves no doubt that the witness fully understood that he was under judicial compulsion to answer the prosecutor's questions and that he would be held in contempt if he refused. Indeed, petitioner's counsel on oral argument conceded that petitioner had such understanding. In the circumstances, there was substantial compliance with the requirement that the witness be ordered "to give the requested evidence". (Cf. *People v La Bello,* 24 NY2d 598, 605-606, *supra* [witness received the full protection of section 2447 of the former Penal Law despite the fact that the Grand Jury granted him immunity before he could assert his privilege]).

Petitioner further argues that the purpose of CPL 50.20 is not only to protect the State's interests in avoiding ill-advised conferrals of immunity, but also to protect witnesses against "inadvertently or mistakenly" committing contempts. In response to this argument we note that the history of the

190.40 marks a return to the "automatic immunity" system for grand jury witnesses. The reasons for the change are well summarized in Denzer, Practice Commentary to CPL 190.40 (McKinney's Cons Laws of NY, Book 11A, pp 125-127).

statute gives no indication that the protection of witnesses from "inadvertent" contempt was a motivating force in the statute's enactment. Secondly, it is difficult to conceive of a truly "inadvertent" criminal contempt, inasmuch as intent is a necessary element of the offense *(Matter of Boasberg v Munson,* 286 App Div 951, 952). *Matter of Spector v Allen* (281 NY 251), on which petitioner relies, does not require a different conclusion. The court there did state that a finding of criminal contempt requires "willful" disobedience of a clear command "given in accordance with law", and did observe that "[f]ormality in giving the command may bring home to a person the importance of obedience" (p 260). However, *Spector* is distinguishable on its facts. There a witness was held in contempt for disobeying an oral direction of the Grand Jury foreman to produce a certain "yellow paper". In annulling the contempt order, the Court of Appeals noted that the subpoena duces tecum with which the witness had earlier been served did not specifically mention the "yellow paper", and reasoned that "[n]either oral direction by the District Attorney nor oral clarification by the foreman of a grand jury can change or enlarge the command of the subpoena" *(id.,* p 260). Thus *Spector,* unlike the instant case, involved an unsupervised attempt by nonjudicial officers to modify a judicial command. Here, the court actively participated in the events that resulted in the contempt order and it was the court's own language that brought home to petitioner that he must yield up the required evidence or be punished for contempt. Thus *Spector* is not inconsistent with the conclusion that there was substantial compliance with the "order" requirement of CPL 50.20. It should also be observed that no immunity issue was expressly dealt with in *Spector.*

That there is no requirement that specific words be used in conferring immunity is succinctly stated by Chief Judge FULD in the following from *People v Mulligan* (29 NY2d 20, 23): "we perceive no need for such explicitness as long as the thought itself is expressed, as long as it is brought home to the witness that he has been accorded full and complete immunity and cannot thereafter be prosecuted". The statements of the prosecutor and the court adequately assured petitioner that he had been granted transactional immunity from all crimes revealed in his testimony and further clearly explained the consequences of his refusal to testify. The record amply demonstrates that when he refused to answer the questions, pe-

titioner was not relying on the lack of an explicit order from the court. That objection was raised only after the fact. It was purely and simply an afterthought. Consequently he cannot now object that the contempt order penalizes him for good-faith insistence on the literal application of the statute. We therefore find that there was substantial compliance with the "order" requirement of CPL 50.20; that the mandate of commitment sufficiently stated the circumstances of the offense, and that petitioner's refusal to answer did not rest upon good-faith reliance on a strict reading of the statute. Petitioner was properly found guilty of criminal contempt of court and his petition should be dismissed.

CARDAMONE, J.P., MAHONEY, DILLON and WITMER, JJ., concur.

Petition unanimously dismissed without costs.