Jasen, J.
(dissenting). I cannot agree with the majority’s conclusion that it is within the discretion of the trial court and the parties to determine the proper procedure for conferring transactional immunity. The Legislature has prescribed a detailed procedural statute clearly setting forth the steps which are to be taken by a defendant seeking a grant of immunity and, in light of that statute, I must conclude that there is no authority to deviate from that procedure and set up one’s own ground rules, contrary to the requirements of the statute. I must, therefore, respectfully dissent.
There is no basis at law for the majority’s view that “nothing in the statute expressly precludes the prosecutor and counsel for the witness with the approval of the court from adopting a different procedure in an individual instance or prevents the court from granting immunity to a witness’ entire testimony subject to specific rulings on collateral questions and other evidentiary objections”. (At p 188.) It seems to me that the detailed nature of the statute specifying as it does the precise method of requesting and receiving immunity indicates an express legislative intention that this be the exclusive method for granting immunity. That immunity is exclusively a creation of statute and, as such, can be invoked and can exist only where a statute has so authorized. (Matter of Doyle, 257 NY 244; 8 Wigmore, Evidence [McNaughton rev, 1961], § 2281.) The fact that the procedure established by the Legislature may in some cases prove to be cumbersome or time-consuming does not convey authority on the courts to deviate from the requirements of the statute. Had the Legislature intended the courts to have discretion in deciding whether or not to follow the statutory procedure, it could easily have so provided.
The majority, however, appears to interpret the Legislature’s failure to address any alternative means of obtain *191 ing and conferring immunity to be a tacit approval of other methods which will immunize the witness in a broader fashion than the question-by-question method prescribed by CPL 50.20 and 50.30. In my opinion, the proper interpretation of such legislative silence, particularly when a specific procedure is outlined in the statute, is that the Legislature intended to exclude any other alternatives. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 74.) This is particularly true where a court in exercising discretion — in this case in granting immunity — does so solely on the basis of the authority conferred by legislative enactment. (People v Dunbar, 53 NY2d 868; Matter of Doyle, supra.) It is not unreasonable to conclude that the Legislature intended, in order to avoid inadvertent and unnecessary grants of immunity, that a specific scenario be followed before the court could exercise its legislatively granted authority to confer immunity.
Indeed, the very nature of the procedure established by CPL 50.20 and 50.30 indicates that the Legislature intended a procedure whereby the responsibility of seeking immunity would be upon the witness and that when he has asserted his Fifth Amendment rights, it then becomes the prosecutor’s responsibility to request that immunity be granted if he believes the information sought will justify granting the witness protection from other criminal charges. After considering the merits of the application, the court then is in a position to make its decision. This procedure, while perhaps “cumbersome” as it is termed by the majority, is not impracticable.
It is true that requiring the defendant to assert his Fifth Amendment privilege to each question he feels he should not be compelled to answer may be more time-consuming than allowing him to assert that privilege in a blanket fashion designed to cover every question he will be asked. So, too, it may be somewhat burdensome to require the prosecutor to request the court to instruct the witness to answer and then request that immunity be granted 1 the court may do so. Such a procedure, I believe, is nectt, sary despite its somewhat burdensome nature, not only because the Legislature has so directed, but because socie *192 ty’s interests as well as the interest of the witness are to be protected.
As for those of the witness, if he intends in the future to bar use of his testimony on the basis of the Fifth Amendment, he should assert that right in each situation and be compelled to testify in order to assure that he has been granted immunity as to the specific issue to be testified to.
The prosecutor, on the other hand, as the People’s representative, may only desire to have immunity granted for testimony he believes is critical, and not collateral, to the issues on trial. If he has any question whether the witness’ response will concern a collateral matter, rather than the case being tried, he may choose not to risk the People’s interest in prosecuting the witness on other charges in order to obtain testimony of a limited value in the case being prosecuted. Such a procedure also gives the prosecutor an opportunity to ascertain whether the witness’ testimony will be related to the matter being tried or to a collateral matter.
The case now before us demonstrates the necessity for a procedure which makes perfectly clear to all the interested parties the scope of the immunity being granted. Clearly, only the defendant would be cognizant of whether answers to collateral questions would tend to be incriminating and the onus of invoking the Fifth Amendment privilege in those regards should be placed squarely on him. As was cogently pointed out by Justice Levine in his dissenting opinion at the Appellate Division, “[i]t is elementary that any prosecution witness, including one immunized at the request of the District Attorney, is subject to cross-examination with respect to any immoral, vicious, or criminal acts which may affect his character and show him to be unworthy of belief * * * To extend transactional immunity to a witness’ answers on such collateral matters thus creates a risk of immunity baths beyond the control of the prosecutor and far greater than those which the statutory scheme of CPL 50.20 and its predecessor was designed to avoid.” (89 AD2d, at p 774.) Given the significant ramifications of the grant of immunity, I would hold that the Legislature was perfectly justified in requiring a specific procedure, as set forth in the statute, to be followed.
*193 As noted by Justice Levine, such uncertainty was among the abuses of the predecessor statute’s automatic grant of immunity which lead the Legislature to enact this provision. The legislative history behind the enactment of this procedure was set forth in Matter of O’Neil v Kasler (53 AD2d 310). In that case, the Law Revision Commission had recognized that blanket grants of immunity conferred although the witness took no step to invoke the privilege subjected the system “to manipulation by witnesses”. (Matter of O’Neil v Kasler, supra, at p 317.) The concern expressed in the legislative history is that witnesses will be in a position to maneuver the testimony to secure a grant of immunity even though the testimony was not relevant to the case being tried. I would note that in this case the testimony about another unrelated drug deal was clearly irrelevant, as the trial court found.
The Law Revision Commission concluded that a requirement that the witness “positively assert his privilege would * * * notify ‘the person representing the state * * * that the witness regards the testimony as incriminating’ and afford ‘an opportunity to weigh the interests of the state against the value of the particular testimony sought’.” (Matter of O’Neil v Kasler, 53 AD2d 310, 318, supra, citing 1942 Report of NY Law Rev Comm, pp 354-355.) The commission adhered to its position and in 1953 the New York State Crime Commission adopted that position, also recommending a three-part procedure comparable to the present statute and designed to protect the interests of all involved in such a transaction.* This recommendation was codified as section 2247 of the former Penal Law, the predecessor of the statute now under consideration.
In light of such clear legislative history, I cannot agree that the Legislature intended to allow the courts discretion *194 to deviate from a procedure designed to protect the interests of all involved in the proceeding, particularly the interests of society, which the prosecutor bears the responsibility for protecting. Thus, I would agree with the Appellate Division in Matter of O’Neil (supra, at p 320) when it held that “the statute’s main thrust is to assure that a prosecutor will have advance warning that his questions [or those asked of his witness] may provoke incriminating responses, so that he can make a better-advised choice whether the value of the evidence sought from a witness outweighs the State’s interest in prosecuting him for such wrongdoing as his testimony may reveal.”
Since I believe that the clear mandate of the Legislature in enacting CPL 50.20 and 50.30 requires a holding that no immunity had been conferred upon defendant with regard to the sale of drugs in Chemung County, the order of the Appellate Division should be reversed and the petition to prohibit Chemung County Court from exercising its jurisdiction over defendant be dismissed.
Chief Judge Cooke and Judges Wachtler, Meyer and Simons concur with Judge Jones; Judge Jasen dissents and votes to reverse in a separate opinion.
Judgment affirmed, without costs.

 “In a 1953 report, the New York State Crime Commission adopted the Law Revision Commission’s view by recommending ‘that legislation be adopted to accomplish the following:
‘A. Require that before immunity may be obtained: (1) the witness must in good faith claim his privilege against self-incrimination; (2) he must be directed by competent authority to testify, notwithstanding his claim of privilege; and (3) he must testify pursuant to such direction.’ ” (Matter of O’Neil v Kasler, 53 AD2d 310, 318.)