OPINION OF THE COURT
Mary M. Werner, J.
This motion by respondents, the Board of Assessors and the Board of Assessment Review of the Town of Islip, for an order pursuant to CPLR 3211 (a) (1), (2) and (7) dismissing certain of the within proceedings on the ground that petitioners failed to comply with RPTL 524 and 706 and for a further order dismissing certain of the within proceedings in their entirety upon grounds set forth in CPLR 3022, is decided as follows.
These proceedings were commenced pursuant to RPTL article 7 on August 12, 1993 and August 4, 1994, by service upon the Town of Islip each year of a single notice of petition and petition relating to 29 separate properties for the 1993-1994 tax year and 30 separate properties for the 1994-1995 tax year. At issue in this motion are three properties for the 1993-1994 tax year and all properties for the 1994-1995 tax year.
Respondents allege that in each case petitioners’ counsel did not have the proper authorization to file either the grievance, the subsequent petition or both. In two instances, the property was sold and no authorization was signed by the individuals who owned the property on grievance day. Respondents urge that the failure of counsel to have the proper authorizations when the grievance and/or petitions were filed is a jurisdictional defect and further invalidates the verification and seek dismissal of the named proceedings. For the reasons set forth, the motion is granted in part aqd denied in part.
Property tax grievances are regulated by RPTL article 7. "Any person claiming to be aggrieved by any assessment of real property upon any assessment roll may commence a *64 proceeding under [article 7] by serving a petition described in section seven hundred six of this chapter” (RPTL 704).
Any petition served pursuant to article 7 must "show that a complaint was made in due time to the proper officers to correct such assessment.” (RPTL 706 [2].) The provisions governing the complaint process are set forth at RPTL 522 et seq.
At the Board of Assessment Review level, a complaint must include a statement specifying in what respect the assessment is improper and shall contain an estimate of the value of the real property. "Such statement must be made by the person whose property is assessed, or by some person authorized in writing by the complainant or his [or her] officer or agent to make such statement who has knowledge of the facts stated therein. Such written authorization must be made part of such statement and bear a date within the same calendar year during which the complaint is filed.” (RPTL 524 [3].)
Similarly, at the petition stage of the proceeding, a petition must be duly verified by either the petitioner or "by an agent thereof who has been authorized in writing to verify and file such petition and whose authorization is made part of such petition.” (RPTL 706 [2].)
There are several categories of alleged defects and each category shall be addressed in turn.
Respondents seek to dismiss the 1993-1994 petition with respect to three properties. The first property designated on the Suffolk County tax map as 500-392-4-13 included no authorization when the complaint was filed with the Board of Assessment Review nor when the petition was served and filed with the court.
Counsel does not deny that he did not have a written authorization from George Graham, the property owner at the time the appeal was filed. Rather, from counsel’s affirmation in opposition, although he claims verbal authority, it is clear that counsel’s office did not even speak to Mr. Graham until October 23, 1993, well after the 1993 appeal deadline.
Mr. Graham finally did sign an authorization. However, while marked "1993/94 Tax Year”, it is dated August 8, 1994. Moreover, while counsel for petitioner states that Mr. Graham cured his failure to supply authorizations in a timely fashion by signing two authorizations, one of which was marked 1993-1994 and the other 1994-1995, the only authorization provided to the court is the one marked 1993-1994.
With the 1994-1995 petition, counsel submitted authoriza *65 tions with the petition for 12 of the properties, although the same were omitted from the complaint filed with the Board of Assessment Review. These properties are described as 500-392-4-1; 500-392-4-4; 500-392-4-8; 500-392-4-9; 500-392-4-11; 500-392-4-12; 500-392-4-16; 500-392-4-17; 500-392-4-20; 500-392-4-23; 500-392-4-27; 500-392-4-28.
Authorizations were ultimately filed with respect to 16 of the remaining 18 parcels for 1994-1995, albeit, after the time to file a petition had expired (including the two properties which were sold). All these authorizations were either dated July 22, 1994 and submitted sometime thereafter: 500-392-4-5; 500-392-4-6; 500-392-4-14; 500-392-4-15; 500-392-4-18; 500-392-4-21; 500-392-4-34, or dated August 24, 1994 and submitted sometime thereafter: 500-392-4-22; 500-392-4-24; 500-392-4-25; 500-392-4-29; 500-392-4-30; 500-392-4-33; 500-392-4-36. The authorizations for the sold properties were dated September 27, 1994 and submitted with counsel’s affirmation in opposition (500-392-4-32) and September 2, 1994 and submitted September 9, 1994 (500-392-4-10). No 1994-1995 authorizations were submitted for properties identified as 500-392-4-13 or 500-392-4-26.
The question is whether submission of these authorizations signed either after the complaint was filed, or after the petition was filed, and in one case, over one year beyond the appeal deadline, is sufficient to satisfy the statutory requirement of the RPTL and if not, to what result.
It is well settled that the RPTL as it relates to review of assessments is remedial in nature and should be liberally construed so that a taxpayer’s right to have his or her assessment reviewed is not defeated by a technicality (Grant Co. v Srogi, 52 NY2d 496, 513 [1981]; Matter of Great E. Mall v Condon, 36 NY2d 544, 548 [1975]; Matter of Batavia Enters. v Assessor of Town of Batavia, 72 AD2d 912, 913 [4th Dept 1979]). Failure by petitioner to comply with technical pleading requirements does not render the petition jurisdictionally defective. (Matter of Batavia Enters. v Assessor of Town of Batavia, supra.) "A tax assessment review differs from ordinary litigation because the public interest is directly involved, the governmental unit having as great an interest in fair and equitable assessment as the taxpayer”. (Supra.)
Respondents make much of the failure of petitioners to include authorization at either the complaint or petition stage of the appeal process. They refer to the legislative history of *66 one amendment to RPTL 706 (L 1977, ch 438, § 1) which for the first time required authorization to be made part of petitions. The court agrees that the rationale behind the amendment was "to eliminate the filing of unauthorized petitions and avoid duplicate filings, thereby simplifying the processing of authorized petitions.” (Mem in Support, Mirto, Bill Jacket, L 1977, ch 438.) However, while this may have been the intent of the amendment, courts have held that such requirement is not jurisdictional.
The Second Department has already held that the omission of these authorizations required by statute is a mere technical defect, which would not bar the proceedings and is not a jurisdictional defect (Bergman v Thorne, 100 AD2d 526, 527 [2d Dept 1984]). In so holding, the Appellate Division reversed Special Term who, specifically noting that this was a case where the written authorizations did not even exist when the petitions were filed, had dismissed the subject proceeding.
This court has no quarrel with respondent’s complaints that counsel’s failure to submit authorizations places a burden on the municipality. However, while not condoning petitioner’s blatant disregard of an express provision of the statute, such burden does not amount to prejudice which would preclude this proceeding.
Therefore, even though counsel did not have the proper authorizations signed when filing the grievance and/or the petitions in clear violation of the statute, the court is constrained, by the authority of Bergman v Thorne (supra), to find that such omission was "a mere technical defect”, and not a bar to the proceeding.
The defect raises another issue, however, which is the validity of the verifications at the petition stage of the process. As stated above, tax certiorari petitions must be verified by either the petitioner or an agent who has been authorized in writing to verify the petition (RPTL 706). Those petitions filed without written authorizations, therefore, included defective verifications (see, Bergman v Thorne, supra). "A defectively verified pleading shall be treated as an unverified pleading. Where a pleading is served without a sufficient verification in a case where the adverse party is entitled to a verified pleading, he [or she] may treat it as a nullity, provided he [or she] gives notice with due diligence to the attorney of the adverse party that he [or she] elects so to do.” (CPLR 3022.)
In Bergman v Thome (supra), the Appellate Division, Second *67 Department, stated that respondents in that case where a verification did not comply with RPTL 706 could have treated the verified petition as a nullity provided they gave notice "with due diligence.” The Court held, however, that by waiting at least four years to move to dismiss the petitions, respondents waived their objections to the defective verifications (supra).
With respect to the Graham property, respondents waited over one year to object to the defective verification. The court finds that this does not satisfy the "due diligence” requirement and holds that respondents waived their objection to the defective Graham verification. Accordingly, respondents’ motion with respect to Graham’s 1993-1994 petition is denied.
However, with respect to the 1994-1995 petitions which were also filed without proper authorizations, the court finds that respondents, by notifying petitioners’ counsel by letter dated August 22, 1994, that it was considering the defectively verified 1994-1995 petitions a nullity did object with due diligence to satisfy CPLR 3022.
Some courts have held "due diligence” to mean immediately or within 24 hours (see, Matter of Lentlie v Egan, 94 AD2d 839, affd 61 NY2d 874; Matter of O’Neil v Kasler, 53 AD2d 310 [4th Dept 1976]). However, this court agrees with the recent opinion of Judge Richard F. Braun of the Civil Court of New York City which stated "the interpretation of the term 'due diligence’ under CPLR 3022 must turn on the particular circumstances. While due diligence could be within two days of a party’s receiving a verification in a particular instance, it may not be in another.” (Ft. Holding Corp. v Otero, 157 Misc 2d 834 [Civ Ct, NY County 1993].)
Under the circumstances here, where there is a limited time for serving tax certiorari petitions and where respondents are served with almost 10,000 tax certiorari petitions and small claim petitions in that time period, it cannot be said that respondents did not object with due diligence by notifying counsel within weeks of being served with the petition of its intention to treat the pleadings as a nullity.
Accordingly, the motion is granted and the petition dismissed with respect to the following properties where the petition was filed without a proper authorization and where respondent objected with due diligence:
*68 Item No. Tax Map No. 1772 500-392-4-5 1773 500-392-4-6 1777 500-392-4-10 1811 500-392-4-13 1812 500-392-4-14 1813 500-392-4-15 1782 500-392-4-18 1801 500-392-4-33 1804 500-392-4-36 1785 500-392-4-21 1786 500-392-4-22 1780 500-392-4-24 1789 500-392-4-25 1791 500-392-4-26 1794 500-392-4-29 1797 500-392-4-30 1802 500-392-4-34
However, the property described as 500-392-4-32 was not included in the August 22, 1994 letter. Therefore, respondents did not object with due diligence that this property had a defective verification. Accordingly, the motion is denied as to 500-392-4-32.
In their motion, respondents object to two properties which were sold. The motion was already granted with respect to the first property, 500-392-4-10, the Diamond property’s petition for reasons stated above. However, respondents did not include the property identified as 500-392-4-32, the Wilson property in the August 22, 1994 letter wherein respondents stated that it was treating certain pleadings as a nullity. This property was formerly owned by Barbara DeRuvo, who sold the parcel to Dorothy Wilson on April 15, 1994, which is prior to both filing dates for the 1994-1995 tax year. Notwithstanding the sale, the petition was brought in the name of the prior owner, DeRuvo. Dorothy Wilson signed an authorization dated September 22, 1994. "Like an omitted authorization by the petitioner, a defect with respect to the name of the petitioner, where there is proper authorization by the appropriate individual, is a 'technical defect which should not operate to bar the proceedings’ ”. (Matter of Rotblit v Board of Assessors, 121 AD2d 727 [2d Dept 1986], quoting Bergman v Thorne, supra.)
Since counsel obtained the authorization of the proper party, albeit late, the court finds the error in naming the prior owners to be a technical defect. And while the authorization was late, since respondents did not object with due diligence *69 and it was treating the pleading as a nullity, the objection is waived. Therefore, the motion to dismiss the petition as to the DeRuvo/Wilson property is denied.
With respect to the two remaining 1993-1994 properties designated as 500-392-4-25 and 500-392-4-28 (Zucchero and Slimar properties), respondents complain that the authorizations were not properly signed. Examination of the authorizations reveals that Mr. Zucchero printed his name and on Mr. Slimar’s authorization, a mark exists indicating an authorization was signed. The court need not reach the question of whether these marks are sufficient because, again, the Second Department has held even where no written authorization existed when the proceeding was commenced, such defect was technical and would not bar the tax proceeding. (Matter of Rotblit v Board of Assessors, supra.) Moreover, even if the authorizations were defective, again, by waiting over one year to object, respondents failed to timely give notice that it considered the defectively verified pleading a nullity, thereby waiving such objection. Therefore, the motion with respect to the Zucchero and Slimar properties is denied.
In sum, the motion is granted with respect to the 1994-1995 petition for properties described as:
Item No. Tax Map No. 1772 500-392-4-5 1773 500-392-4-6 1777 500-392-4-10 1811 500-392-4-13 1812 500-392-4-14 1813 500-392-4-15 1782 500-392-4-18 1801 500-392-4-33 1804 500-392-4-36 1785 500-392-4-21 1786 500-392-4-22 1780 500-392-4-24 1789 500-392-4-25 1791 500-392-4-26 1794 500-392-4-29 1797 500-392-4-30 1802 500-392-4-34
and denied with respect to the 1994-1995 petition for properties where either the authorization was filed with the petition or where respondent did not object with due diligence to the defective verified petition:
*70 Item No. Tax Map No. 1768 1771 1779 1778 1809 1810 1814 1781 1784 1787 1792 1793 500-392-4-1 500-392-4-4 500-392-4-8 500-392-4-9 500-392-4-11 500-392-4-12 500-392-4-16 500-392-4-17 500-392-4-20 500-392-4-23 500-392-4-27 500-392-4-28 1799 500-392-4-32
The motion with respect to the 1993-1994 petitions is denied with respect to all three properties:
Item No. Tax Map No. 1811 500-392-4-13 1789 1793 500-392-4-25 500-392-4-28