[5 NYS3d 826]

CIRILO RODRIGUEZ, Petitioner, v WESTCHESTER COUNTY BOARD
OF ELECTIONS et al., Respondents.

Supreme Court, Westchester County, February 27, 2015

*Sussman & Watkins,* Ossining (*Michael A. Deem* of counsel), for petitioner.

*Anthony Mamo,* Sleepy Hollow, for Karin T. Wompa and others, respondents.

*Robert F. Meehan, County Attorney,* White Plains (*Carol F. Arcuri* of counsel), for Westchester County Board of Elections and others, respondents.

*Janet A. Gandolfo,* Sleepy Hollow, respondent pro se.

## OPINION OF THE COURT

CHARLES D. WOOD, J.

The parties' documents were read in connection with petitioner's requested relief to declare null and void each nomination for village office of the Village of Sleepy Hollow arising from the Democratic Party Caucus, to wit: the mayor and three trustees as reflected in the certificate of nomination signed and dated January 22, 2015, and other relief in connection therewith. The court also considers respondents' Karin T. Wompa, Bruce Campbell, Mary C. Linder and Jose A. Chevere, Jr., (moving respondents) motion to dismiss, and pro se respondent Janet Gandolfo's motion to dismiss.

Upon the foregoing papers and the proceedings before this court, the motions to dismiss, specifically on the issue of whether petitioner failed to properly commence this proceeding by verified petition as required by article 16 of the Election Law, are determined as follows:

The petitioner commenced this proceeding by petition and order to show cause, signed on February 4, 2015. Service was to be completed upon each respondent on or before February 4, 2015.[1] The petition did not allege that the petitioner is a member of the Democratic Party, but that he is a duly qualified voter in the State of New York.[2] Petitioner's exhibits 2 and 3 likewise state that petitioner is an enrolled voter in the Town of Mount Pleasant, not that he is a Democrat. In their cross motions, moving respondents raised the issue of the lack of a proper verified petition on February 8, 2015. Westchester County Board of Elections (WCBOE) and the four named commissioners filed an answer on February 6, 2015, asserting as a defense the lack of a verified petition. Respondents Gandolfo individually, and Wompa, Campbell, Linder, and Chevere, Jr. as a group, interposed their answers on February 8, 2015, asserting the defense of the unverified petition. In addition, when the parties appeared before this court on February 9, 2015, they raised the issue of verification of the petition, and whether the defect—if there is one—is fatal to the petition. Petitioner argues that the WCBOE respondents' answer is a nullity as it was not verified, and that since it did not assert the lack of verification of the petition immediately or within 24 hours of being served, WCBOE has waived that defense.[3]

The Curious Origins of the 24-Hour Deadline

Generally, "where a pleading is served without a sufficient verification in a case where the adverse party is entitled to a verified pleading, he may treat it as a nullity, provided he gives *notice with due diligence* to the attorney of the adverse party that he elects so to do" (CPLR 3022 [emphasis supplied]). While courts frequently mention that due diligence has been found to mean "immediately" or within 24 hours, it is extraordinarily rare that a court actually imposes a 24-hour deadline, and curiously, not one court that has done so cites to the actual origin of the alleged rule.

**1.** In this decision and order, the court has not considered whether service was timely accomplished as set forth in the order to show cause. The court notes that some of the respondents claim that they were not timely served.

**2.** The respondents did not raise any issue about the petitioner's enrollment.

**3.** Due to the expedited nature of this election matter, and the petitioner's arguments made before the court on February 9, 2015, the court is applying all of petitioner's arguments and reasoning from his reply affirmation of February 9, 2015 to all respondents.

The Second Department has cited *Matter of Ladore v Mayor & Bd. of Trustees of Vil. of Port Chester* (70 AD2d 603, 604 [2d Dept 1979]) for the proposition that due diligence has been interpreted as " 'immediately' and within 24 hours" (*see Matter of Master v Pohanka*, 44 AD3d 1050, 1052 [2d Dept 2007]). However, in *Ladore*, the Second Department did not create or adopt a 24-hour deadline, and in fact the time elapsed in rejecting the pleading was not what the court ruled on. The facts in *Ladore* were that the respondents were aware of the verification flaw on the return date of the order to show cause in Supreme Court, which was between three and five days after service. The respondents only raised lack of personal service at that appearance. The next day, when it was too late for the petitioner to re-file, respondents attempted to raise the verification issue, which the Second Department found they had waived. It was clearly not the three to five days that were the issue, but rather the clear gamesmanship employed by respondents, in making a motion to dismiss on service, then only raising the verification issue in their answer, seeking to take advantage of the statute of limitations that expired in the interim.

The Fourth Department became the first court to impose a 24-hour deadline in *Matter of O'Neil v Kasler* (53 AD2d 310 [4th Dept 1976]), which was cited by the Second Department in *Ladore*. While that case involved a delay of eight days (53 AD2d at 315), the Fourth Department espoused the 24-hour deadline, citing *State of New York v McMahon* (78 Misc 2d 388 [Sup Ct, Albany County 1974] [also cited in *Ladore*]). There, the Attorney General of the State of New York brought a motion to compel a convicted forger to verify his answer to a civil complaint, or to have the court treat the unverified answer as a nullity. Citing *Westchester Life, Inc. v Westchester Mag. Co.* (85 NYS2d 34 [Sup Ct, NY County 1948]), the Supreme Court in *McMahon* did state that due diligence had been held to be 24 hours, but explicitly did not apply that "rule," finding that the State's underlying motion to compel was otherwise without merit (78 Misc 2d at 389).

The Third Department applied the 24-hour deadline, in one very strict instance (*Matter of Ireland v Town of Queensbury Zoning Bd. of Appeals*, 169 AD2d 73 [3d Dept 1991]), reversing the Supreme Court's dismissal of an unverified CPLR article 78 petition. In so doing, the authority it cited was its own decision in *Matter of Lentlie v Egan* (94 AD2d 839, 840 [3d Dept

1983], *affd* 61 NY2d 874 [1984]), in which the Court also espoused the 24-hour rule, but stated that the improper verification issue arose from petitioner's "urgent prayer advanced in his brief and at oral argument" before the Third Department. Not surprisingly, the defense was deemed waived at that stage. The *Lentlie* Court's only support cited for the 24-hour deadline was Siegel's Practice Commentaries. Notably, with respect to the 24-hour deadline, until 2004, Professor Siegel only referenced *Westchester Life, Inc. v Westchester Mag. Co.* (David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3022:2 at 310 [1991 ed]; *but see* David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3022:2, 2006 Pocket Part at 139, 140 ["The (Court of Appeals) cites many cases going this way and that on the matter and several treatments by this writer showing the inconsistencies"]). Despite Siegel's update, his successor has fallen back into the *Westchester Life* trap, citing it first in his CPLR 3022:2 analysis (Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3022:2 at 35 [2010 ed]).

Three years after *Ireland*, the Second Department first applied a strict 24-hour rule in *Theodoridis v American Tr. Ins. Co.* (210 AD2d 397 [2d Dept 1994]). Ironically, this case is frequently cited for the proposition that the Court looked at the "particular circumstances of the case" (*see Matter of Miller v Board of Assessors*, 91 NY2d 82, 86 n 3 [1997]; *3170 Atl. Ave Corp v Jereis*, 38 Misc 3d 1222[A], 2013 NY Slip Op 50235[U] [Civ Ct, Kings County 2013]; *562 W. 149th St. HDFC v Rodriguez*, 5 Misc 3d 1020[A], 2004 NY Slip Op 51471[U] [Civ Ct, NY County 2004]). In so doing, the Second Department relied upon only cases from other departments (*Ireland*, 169 AD2d 73 [3d Dept]; *Lentlie*, 94 AD2d 839 [3d Dept]; *McMahon*, 78 Misc 2d 388 [Sup Ct, Albany County]; *Matter of Nafalski v Toia*, 63 AD2d 1039 [3d Dept 1978] [13-day delay, no mention of 24-hour rule]; *Matter of Houghwot v Town of Kiantone*, 69 AD2d 1011 [4th Dept 1979] [no facts given regarding delay, no mention of 24-hour rule]; *Matter of Ames Dept. Stores v Assessor of Town of Concord*, 102 AD2d 9 [4th Dept 1984] [28-day delay, 24 hour-rule mentioned]). The last of these cases cites the 24-hour rule back to the Second Department decision in *Able Breaking Corp. v Consolidated Edison Co. of N.Y.* (88 AD2d 649, 649 [2d Dept 1982]), in which there is no mention or discussion of a 24-hour rule, but rather, an eight-day delay was deemed "un-

reasonable under the circumstances." As discussed, supra, the Third Department in *Ireland* and *Lentlie* relied upon Siegel's Commentaries, which, along with the Supreme Court in *McMahon*, relied upon *Westchester Life*.

Thus, the only source of three Appellate Divisions' application of the 24-hour rule comes from the New York County *Westchester Life, Inc. v Westchester Mag. Co.* decision from 1948. Surprisingly, in that case, the court specifically did not rule based on the timing of the objection to the verification. The opening sentence of the court's decision states: "Apart from the fact that the answer, claimed not to have been verified, was not returned within twenty-four hours, there is the more serious objection to the granting of plaintiff's motion to enter judgment on default" (85 NYS2d at 34). The court noted that the returned answer was insufficient because "it should have stated that the ground of the return was that the verification attached to the answer had been made in advance of the typing of the answer" (*id.*). The court held that the failure to afford the party the opportunity to cure the defect rendered the return defective (*id.*). Amazingly, this reference to 24 hours in precatory language— which has absolutely no precedential value—became the starting point in the CPLR 3022 due diligence analysis for decades— and has been imposed as an authoritative rule by three Appellate Divisions.

On the other hand, the Court of Appeals has "never specified a uniform time period by which to measure due diligence" in interpreting CPLR 3022 (*Lepkowski v State of New York*, 1 NY3d 201, 210 [2003]). In *Lepkowski*, the Court of Appeals referenced its discussion of due diligence in *Matter of Miller v Board of Assessors* (91 NY2d 82 [1997]). *Miller* was a case where the Court held that it did not need to decide whether a delay of 18 days was more than due diligence would permit, deciding on other grounds. The Court pointed to the origin of the 24-hour deadline being found in *Paddock v Palmer* (32 Misc 426 [Sup Ct, Onondaga County 1900]). Even in that earliest appearance of a 24-hour deadline, the *Paddock* court cited no authority for it, and the modern day reader is left to speculate whether in fact it was a local rule of practice in nineteenth century Onondaga County. Regardless of its origin, the *Paddock* court makes it clear that it is not a rigid rule:

> "The question of what is due diligence is a variable
> one, and is to be governed by the different circum-
> stances of different cases. It has come to be ac-

cepted as the ordinary rule of practice, at least, that due diligence in the return of a pleading means within twenty-four hours after its receipt under ordinary circumstances" (32 Misc at 433).

The court then went on to analyze that the delay was five days, and the attorney for the party claiming the verification flaw had "carefully framed" allegations that he was out of town, and that the court suspected that he was not gone for the length of time claimed.

■ Clearly, 24 hours has never been, nor should it be, a strict deadline for determining due diligence. It is extraordinarily unrealistic to expect a layperson, who otherwise is not litigating, to have counsel standing by on retainer, ready to interview the client and the pleadings, draft the return with deficiencies specified, and serve it within 24 hours. The text of CPLR 3022 says "due diligence," which, by its very nature, requires that the court examine the facts and circumstances surrounding the service and rejection of the pleading. Obviously, those facts might include the amount of time elapsed between service of the faulty pleading and the return; reasons for, and reasonableness of time elapsed; whether the party rejecting the pleading already had counsel or is an attorney; whether the issue was raised at the first opportunity, whether in writing or in court; whether a statute of limitations or other deadline has expired during the time elapsed; and the credibility of the party in its pleadings and testimony given, if any. Ultimately, due diligence requires prompt attention, no undue delays, and no whiff of gamesmanship. While it is possible that due diligence could require formal notice within 24 hours, it is infinitely more likely that due diligence can be accomplished beyond the artificial 24-hour deadline that courts have repeatedly cited, and in several cases, imposed without any real basis. In any event, the 24-hour deadline does not appear ever to have been applied in an election case. It is well-settled that Election Law proceedings are subject to severe time constraints, and they require immediate action (*Matter of Master v Pohanka*, 44 AD3d 1050, 1052 [2d Dept 2007]). Specifically, Election Law § 16-116 requires that a special proceeding under this article shall be heard upon a verified petition and such oral or written proof as may be offered (*Matter of Tenneriello v Board of Elections in City of N.Y.*, 104 AD2d 467 [2d Dept 1984], *affd* 63 NY2d 700 [1984]). This requirement of a verified petition has been strictly adhered to and deemed jurisdictional in nature

(*Matter of Goodman v Hayduk*, 45 NY2d 804, 806 [1978]). In fact, the Court of Appeals has held that "to find an unverified petition nonetheless acceptable to institute the special proceeding would not serve practical purposes or advance the policy behind section 16-116 of the Election Law" (45 NY2d at 806).

■ Here, upon this court's review of the petition, it was not verified, nor was it notarized, which is a circumstance which could obviate the argument of prejudice or possibility of fraud (*Matter of Rose v Smith*, 220 AD2d 922, 923 [3d Dept 1995]). In fact, this case presents a more troubling set of facts. The petitioner himself never signed the petition, although his attorney's statement in the petition avers that the petitioner, "through his attorneys, hereby states under the penalty of perjury." The petition goes on to assert various statements in the attorney's voice, such as "I am an attorney admitted to practice," and "I serve as Staff Counsel." The court notes that CPLR 3020 (d) (3) permits an attorney to verify pleadings under certain circumstances. Here, however, the petition—without verification—was signed by the attorney, with no reason set forth by the attorney justifying or explaining why the statements in the petition are made by him, rather than the petitioner, which further fails to meet the requirements of a verification under CPLR 3021. Even though petitioner's attorney attempted to justify his having been the one to sign the petition, claiming that it constitutes a verification in his reply affirmation, the verification requirement is jurisdictional in nature and cannot be cured by amendment (*Matter of Goodman v Hayduk*, 45 NY2d 804 [1978]; *Matter of Niebauer v Board of Elections in the City of N.Y.*, 76 AD3d 660 [2d Dept 2010]). In any event, the attorney's contention in his reply affirmation that he himself possessed "personal knowledge of said facts as great as the petitioner's" is similarly unavailing. Without the initial verification signed by the petitioner, or at least a valid attorney verification in compliance with CPLR 3021, the floodgates are wide open for shortcuts, fraud, and chicanery in an area of the law that needs to assure that such possibilities are limited. The court notes that even if the timing of the respondents' motion were to be considered, that they did exercise due diligence under CPLR 3022.

Finally, petitioner argues that because his petition alleged "disenfranchisement of voters," it deserves some favored treatment. He urges this court to apply the extraordinarily narrow Third Department decision in *Matter of Rose v Smith* (220

AD2d 922 [3d Dept 1995]), and examine the issue of whether the respondents were prejudiced by the lack of verification. Under the particular facts of that case, the sharply divided Third Department permitted the validation proceeding to stand despite a faulty verification, because the underlying invalidation by the Board of Elections should not have occurred. Therefore, the facts and the holding are similar to *McMahon* (78 Misc 2d 388), in that the Court would not permit a technical flaw in a pleading that was precipitated by a pleading of the opposing party that should have failed on its own. To hold otherwise, a party "achieve[s] indirectly what they could not achieve directly" (220 AD2d at 924).

Here, it is the petitioner that has brought this proceeding, doing so in a manner that does not meet the statutory requirement under CPLR 3021. The fact that the buzz word "disenfranchisement" is used does nothing to differentiate this case from any other election case, which by its very nature has a winner and a loser. Disenfranchisement occurs in the eyes of the loser, whether he or she is removed from the ballot or the opponent is placed on it.

In light of the foregoing, given that this is an Election Law proceeding, the court finds that since this matter was not brought by verified petition as required by Election Law § 16-116, it is procedurally defective and must be dismissed.

Accordingly, for the stated reasons, it is hereby ordered, that the petition is dismissed; and it is further ordered, that the Clerk shall mark his records accordingly; and it is further ordered, that moving respondents are directed to serve a copy of this decision and order, with notice of entry, upon the Clerk, and all parties within 10 days of such entry and file proof of service within five days of service; and it is further ordered that all other applications and/or branches of relief not herein decided are denied and/or deemed moot as a result of this decision.